UNITED STATES of America

v.

Emanuel W. SIMPSON, Appellant.

No. 24817.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 1972.

Decided Jan. 26, 1973.

Rehearing Denied March 15, 1973.

---

Dennis G. Lyons, Washington, D. C., with whom Douglas G. Robinson, Washington, D. C., was on the brief, for appellant.

Broughton M. Earnest, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee. John G. Gill, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

This case, involving appellant's petition under 28 U.S.C. § 2255 to set aside his plea of guilty to an armed robbery charge, has been before this court on two prior occasions.[1] Following the second remand, a hearing was held on petitioner's allegation that his assigned counsel falsely represented to him that the trial judge had given assurance that defendant would be sentenced under the Youth Corrections Act.

▮ We conclude that the preponderance of evidence supports the judgment rejecting petitioner's claim. The record is not entirely free from doubt, particularly in view of the fact that the attorney assigned to represent appellant at trial, had at best an uncertain recollection as to this case and was unable to produce any file of the case in response to subpoena. He grounded his denial of appellant's allegations primarily upon his unequivocal, emphatic and reiterated assertion that he had never been in Judge Gesell's chambers. Yet at the remand hearing, Richard Hopkins, Esq., attorney for appellant's co-defendant, not only recalled in considerable detail a conference that both he and appellant's trial counsel attended in Judge Gesell's chambers, but also highlighted its importance.

At this conference, said Mr. Hopkins, Judge Gesell asked whether the case would go to trial, was informed that defendant was considering a suggestion to plead guilty to one count but had not yet decided on his course, and then told both counsel that if the case were not disposed of by plea in five minutes he would proceed to trial as scheduled.

While we do not credit the recollection of appellant's trial counsel, we think the record requires affirmance in view of the clearcut testimony of Mr. Hopkins that, following the session in Judge Gesell's chambers, he attended the conference that appellant had with his trial counsel, and that at this critical conference in which appellant shortly agreed to plead guilty, there was no representation such as appellant alleged. There is corroboration, to some degree, of Mr. Hopkins' account in the circumstance of the strong evidence of guilt that confronted all concerned—appellant and his co-defendant were apprehended shortly after the crime, in a "hot pursuit" situation, hiding in a nearby house; and both the proceeds of the robbery and the weapon purportedly used in its commission were recovered from the same premises.

1. United States v. Simpson, 141 U.S.App. D.C. 8, 436 F.2d 162 (1970) (evidentiary hearing ordered); United States v. Simpson, (No. 24,817, July 19, 1971) (order remanding for further hearings).

Appellate counsel suggests that Mr. Hopkins' testimony should not be given critical weight, since he was an intruder, and represented a different interest— the prosecutor would not accept co-defendant's plea of guilty unless defendant pleaded guilty; and the co-defendant, being younger than appellant and having had fewer previous brushes with the law, had a better prospect for Youth Corrections Act treatment.

 The case is not free from difficulty. We are by no means confident of the reasons for, or propriety of, the prosecutor's approach, as reported. And we are not comfortable with the notion that the critical conference was not held under conditions permitting confidentiality of communication. Yet none of these elements has been put forward to us as having constituted undue pressure on this appellant. We cannot develop a blanket rule prohibiting testimony by a third party who attended a conference between client and attorney. Such attendance is not necessarily improper—if consented to by both client and attorney —and when it exists it precludes application of the rule protecting confidentiality.

This has been a most difficult proceeding, involving as it does the allegation that a member of the bar has fallen short of minimum standards. We are indebted to Dennis Lyons, Esq., for the way he has shouldered the burden we have placed on him with our assignment of what is inevitably an unpleasant task; he has shown unremitting application and perservance in his conduct of what is an unwelcome, yet necessary, aspect of the functioning of an officer of the court.

One result of the proceedings has been to refocus the attention of all reflective judges on the need for provision of counsel who meet minimum standards of competence and diligence. This case involves an attorney who was, unfortunately, plagued with a drinking problem,[2] who did not even have an office, who had to be summoned by warrant to attend the 2255 proceedings. If we take pride in our system of justice, as we generally do, that pride must be eroded by records like this one. The case is a warning against complaisant acquiescence in any assumption that the mere assignment of some counsel is enough to meet the constitutional guarantee of effective assistance of counsel.

Affirmed.

BAZELON, Chief Judge, dissenting:

In the narrow view of the majority this case turns on whether Simpson's attorney told him that the trial judge had agreed to impose a Youth Corrections Act sentence in return for the plea. I agree that the record does not show that such a representation was made.

But two successive hearings ordered by this court have opened up new vistas on what else Simpson's Trial Counsel[1] did not do. Based on this showing I would vacate Simpson's plea on the ground that his attorney displayed "such an extraordinary inattention to a client's

2. On March 20, 1968, eight days after petitioner entered his plea of guilty, his attorney was convicted of contempt in the District of Columbia Court of General Sessions for appearing intoxicated in court. This judgment was subsequently reversed on the ground that, while ostensibly conducting a summary proceeding, the court had in fact relied on unsworn testimony of an expert witness. A rule to show cause issued, and on retrial after a formal hearing appellant's trial counsel was again convicted in the Court of General Sessions (June 24, 1969).

1. The attorney who represented Simpson from before his arraignment until after his sentencing will be referred to as "Trial Counsel" in this opinion. His name is not important—the fact that the criminal justice system allows such actions is. Trial Counsel should be sharply distinguished from Mr. Dennis Lyons, who was appointed by this court to represent Simpson in this collateral proceeding. Mr. Lyons, as the majority points out, has earned the court's gratitude by a display of selfless dedication through two successive remands of a case that has not been pleasant either to judge or to litigate.

interests as to amount to ineffective assistance of counsel cognizable under Section 2255." Dillane v. United States, 121 U.S.App.D.C. 354, 355, 350 F.2d 732, 733 (1965); see Bruce v. United States, 126 U.S.App.D.C. 336, 344, 379 F.2d 113, 121 (1967). Moreover, I think that this case raises questions about the ability of the judiciary to ensure that any guilty plea comports with the requirements of the Constitution. Those questions can only be resolved if we specify that trial judges must precede acceptance of any guilty plea with an inquiry into counsel's preparation of the case.

Because the majority's statement of the sordid facts of this case focuses only on the events of the day of trial, a further exposition of the record is necessary. Trial Counsel was appointed to represent Simpson on October 11, 1968. Prior to the morning the case was first scheduled for trial, March 10, 1969, he communicated with Simpson once. That lone meeting occurred when Trial Counsel appeared to argue a motion for pretrial release that Simpson himself had filed in December, after Trial Counsel failed to respond to Simpson's request to act. Before appearing to argue that motion, Trial Counsel had failed to appear at arraignment and had failed to appear at the first hearing set for consideration of Simpson's motion for release. In fact, Simpson had resorted to the device of writing Trial Counsel to remind him of the rescheduled hearing. Simpson's motion was, not too surprisingly, denied.

When the case came up for trial on March 10, Trial Counsel had not prepared. He had filed no motions. He had, according to his own testimony on our first remand, interviewed no victims or potential witnesses—except that he "may have" talked to the arresting officer. Like the majority, I do not credit

this selfserving speculation. Finally, he testified that he had not worked with counsel for Simpson's codefendant, nor did he know what that attorney had done to prepare. Indeed, Mr. Hopkins, the attorney who represented Simpson's codefendant—and who *had* prepared— testified that he informed Trial Counsel that the Government had a strong case while the two of them were on a 30 minute call before the scheduled trial.

· The case was not tried March 10, but was put over for two successive days. During that period Trial Counsel interviewed Simpson twice in the presence of Mr. Hopkins, and may have talked with him a third time without Mr. Hopkins. Concerning the situation on March 12, Trial Counsel testified as follows on our first remand:

Q. Mr. [Trial Counsel], would you have been prepared for trial if the Defendant had not, after [the final conversation that immediately preceded entry of the plea], agreed to plead guilty?

A. I don't know whether I would have proceeded to trial under the facts known to me. It would have called for an · exercise of my professional judgment, and *I believe that I would have perhaps sought to be relieved of my appointment.*[2]

These, then, are the facts of this case other than those recounted by the majority concerning the questionable "joint plea" demanded by the prosecutor, Trial Counsel's general qualifications as an attorney (including his disability due to alcoholism, his failure to respond to court process, and his failure to preserve documents), and the "interviews" at which Mr. Hopkins—who had been placed in an adverse position by the prosecutor's demand for a joint plea— was present.[3]

---

2. Hearing of October 12, 1970, at 50, United States v. Simpson, Cr. No. 2010-68 (D.D.C.) (emphasis added). The next question was also of interest:

 Q. Mr. [Trial Counsel], did you see Mr. Simpson at all between the time of his plea and the time of sentencing?

 A. I don't believe so.
 Id. 50–51.

3. If the record also showed that Simpson was aware of these facts, and either ignorant of his right to ask the court to dismiss Trial Counsel or fearful that such

A plea of guilty constitutes a waiver of the bulk of the accused's constitutional rights.[4] Before such a waiver can be accepted, the trial judge must determine that the plea is both voluntary and knowing.[5] And, in deciding whether to plead, the accused has a constitutional right to the assistance of counsel.[6] A brief examination of the procedures that currently surround the acceptance of guilty pleas will demonstrate that the effective assistance of counsel is not merely a prophylactic measure, but is a necessity if a plea is to be knowing and voluntary.

Rule 11 of the Federal Rules of Criminal Procedure requires that the trial judge address "the defendant personally" and determine "that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea."[7] The Resolution of the Judges of the U.S. District Court for the District of Columbia, which was promulgated in 1959 to give further content to rule 11, requires that the trial judge determine only that the defendant knows that he is forfeiting the "right to a speedy trial by jury with the aid of counsel," and understands "the nature of the charges against him" and "the consequences of entering the plea of guilty."[8]

These requirements ensure only that the defendant understands one of his alternatives.[9] As to the other alternative—that of requiring that the Government prove his guilt—rule 11 and the Resolution of the Judges do not require that the defendant know anything at all. They require only that the trial judge satisfy himself that there is a "factual basis for the plea."[10] Thus, the only device that operates to ensure that the accused can make a "knowing" choice[11] between his alternatives is his right to the assistance of counsel.[12]

a dismissal would result in a substantial increase in his term of pretrial incarceration, I believe that we would have a case of an involuntary plea.

4. See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

5. See Rule 11, Fed.R.Crim.P.

6. See Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

7. Rule 11, Fed.R.Crim.P.

8. See Everett v. United States, 119 U.S. App.D.C. 60, 61 n.3, 336 F.2d 979, 980 n.3 (1964) (Resolutions 1, 3, & 8).

9. See Comment 119 U.Pa.L.Rev. 527 (1971).

10. 336 F.2d 980 n.3 (Resolution 4).

11. The practical implications of this term are apparent. The Supreme Court has not determined the legal content of the requirement that the plea be "knowing." But, in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Court held that the waiver standards that apply to other constitutional rights, including the right to counsel, apply to guilty pleas. And, in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L. Ed. 309 (1948), Mr. Justice Black, writing for a plurality of the Court, spoke of the waiver of the right to counsel in the following terms:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

332 U.S. at 724, 68 S.Ct. at 323.

12. The American Bar Association's Standards Relating to Pleas of Guilty also places this responsibility squarely on counsel:

3.2 Relationship between defense counsel and client.

(a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.

(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important

The majority apparently invokes the Government's overwhelming cast to quiet doubts about the voluntariness of Simpson's plea.[13] That, like the trial judge's determination that the plea has a "factual basis," is not in point.[14] The point is that the right to be tried belongs to the accused, and his decision to give up that right must be "voluntary" and "knowing."

On this record, I believe that Simpson has established by a preponderance of the evidence that Trial Counsel showed the "extraordinary," indeed total, "inattention" to Simpson's case which this court has heretofore indicated it would find to constitute ineffective assistance of counsel.[15] Indeed, there is a solid basis for arguing that Trial Counsel did nothing but show up and, with the aid of an attorney who had an adverse interest, pressure Simpson into pleading guilty.

This is not to argue that the right to the effective assistance of counsel and the right to a knowing and voluntary plea are coextensive. A guilty plea may be rendered void despite counsel's efforts—for example, a defendant may be coerced by a judge's promise of a light sentence. On the other hand, counsel's duties in a guilty plea case may extend beyond his duty to inform his client adequately before the client pleads—assistance at sentencing is one example.[16] But unless counsel has acquired a full grasp of the facts and law of the case before he counsels a client to enter a plea of guilty, his client cannot enter a knowing and voluntary plea.[17]

This case points up the need for procedures which assure that a defendant is adequately advised by his attorney before pleading. At present neither rule 11 nor the Resolution of the Judges establishes any device whereby the trial judge is informed that such advice has been provided.[18] Nor is there even a fortuitous chance that the attorney's preparation will be reviewable on appeal, for no record of his performance is kept. Most troublesome of all, the attorney

---

by him or the defendant in reaching a decision.
Approved Draft, 1968.
Like rule 11 and the Resolution of the Judges, however, the Draft lacks procedural protections adequate to ensure this assistance. It omits any inquiry into counsel's role at the stage where the judge receives the plea, §§ 1.4–1.7, and places the onus of showing ineffective assistance on the defendant, to be exercised by a motion to withdraw the plea. § 2.1(a)(ii)(1).

13. Majority opinion at 935.

14. In Bruce v. United States, 126 U.S. App.D.C. 336, 379 F.2d 113 (1967), this court did require that a petitioner show he was deprived of a substantial defense by his plea. But the court pointed out that extraordinary inattention would constitute ineffective assistance standing alone. *Id.* at 344, 379 F.2d at 121.

15. Dillane v. United States, 121 U.S.App. D.C. 354, 355, 350 F.2d 732, 733 (1965); see Bruce v. United States, 126 U.S.App. D.C. 336, 344, 379 F.2d 113, 121 (1967).

16. The right to the effective assistance of counsel at sentencing is well established. Gadsen v. United States, 96 U.S.App.D.C. 162, 165, 223 F.2d 627 (1955).

For a discussion of the particular duties imposed on counsel by this requirement, see United States v. Martin, 154 U.S. App.D.C. —— at —— ——, 475 F.2d 943 at 954–956 (1973) (Bazelon, C. J., dissenting).

17. The American Bar Association's Standards Relating to The Prosecution Function and The Defense Function aptly points out, in this regard:

The lawyer's duty to investigate is not discharged by the accused's admission of guilt to him or by his stated desire to enter a plea of guilty. The accused's belief that he is guilty in fact may often not coincide with the elements which must be proved in order to establish guilt in law. . . . The accused may not be aware of the significance of facts relevant to his intent in determining his criminal liability or responsibility.
§ 4.1, Approved Draft, 1971 (Commentary, page 226).

18. The Resolution of the Judges does provide that the trial judge should ensure that the accused "has discussed the entry of his plea of guilty fully with his attorney." 336 F.2d at 980 n.3 (Resolution 10). This, however, says nothing about the lawyer's duties.

knows that he will not be required to demonstrate any preparation if his client pleads guilty.

As a result of these procedural defects, the courts are burdened with collateral attacks that require a full hearing to determine what counsel did.[19] And defendants are systematically deprived of the protection of constitutional waiver requirements that place the burden of proof on the Government. Relegated to collateral attack, they must prove ineffectiveness—and the resulting unintelligent plea—by a preponderance of the evidence.

If constitutional waiver standards are to be judicially enforceable, there must be some external check on the quality of counsel's assistance in the plea bargaining process. In fairness to the defendant and the courts, that check should oc-cur at the stage of the proceeding when the burden of showing a knowing and voluntary waiver is on the Government. I would require that trial judges determine that the defendant's decision to plead guilty is a properly informed choice by including in the record a showing that counsel has made "an independent examination of the facts, circumstances, pleadings and laws involved and then [offered the defendant] his informed opinion as to what plea should be entered." [20] Developing precise contours for this requirement might take some experience with actual cases, but we could well begin by requiring that the attorney indicate, orally or in writing, the extent and results of his investigation of the facts of the case and a concise breakdown of his steps in its preparation.[21]

19. The nature of this burden, and the difficulties involved in determining the nature of the review required in this type of collateral attack, are set forth at length in our first opinion in this case. United States v. Simpson, 141 U.S.App.D.C. 8, 436 F.2d 162 (1970).

20. See Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948) (Black, J., delivering the judgment of the Court and an opinion) :

A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide whether to plead guilty than to an accused who stands trial. See Williams v. Kaiser, 323 U.S. 471, 475 [65 S.Ct. 363, 366, 89 L.Ed. 398]. Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.

21. The Superior Court of the District of Columbia presently requires appointed counsel to submit a concise statement of his steps in preparation of the case. To demonstrate that such a requirement would be neither unrealistic nor overly burdensome to counsel, I attach as an appendix to this opinion a copy of the relevant portions of the Superior Court form and explanatory memorandum (Emphasis in Appendix added).

A more rigorous requirement is set forth in Tigar, Foreward, The Supreme Court 1969 Term, 84 Harv.L.Rev. 1, 23–24 (1970) :

If the *Johnson* [v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938)] concept of waiver is to have any real meaning in the plea bargaining context, lawyers and judges must ensure that decisions to plead guilty are made by defendants who are fully aware of the rights and privileges they forego by not insisting on a trial. [The judge should thoroughly question the defendant.] The judge should then question the lawyer carefully about the factors involved in pleading his client guilty, including the availability of legal defenses . . . . The judge must be an active participant in the process of informing the defendant, ensuring that the lawyer and defendant have taken current judicial decisions into account and weighed the possibility of their application. The defense and prosecuting attorneys should be asked to reveal the nature and extent of their conversations concerning the case, including their relative assessments of the legal and factual problems . . . .

See also Finer, Ineffective Assistance of Counsel, to be published in the May 1973 issue of Cornell Law Review.

APPENDIX

SUPERIOR COURT FOR THE

DISTRICT OF COLUMBIA

July 14, 1972

TO: Counsel Appointed Under the Criminal Justice Act
FROM: Criminal Justice Committee of the Superior Court
RE: Supplemental Voucher Information

To inform the Judges more fully concerning the nature of services rendered by counsel appointed under the Criminal Justice Act, and to insure that compensation claims accurately reflect the work performed, the Court has deemed it appropriate to require completion of a "Supplemental Voucher Information" form in each Criminal Justice Act case. This form, properly filled out, must accompany each voucher for compensation (CJA Form 20) submitted to the Criminal Justice Act Office or, for Family Division cases, to the Attorney Advisor's Office.

\* \* \* \* \* \* \* \* \* \*

*It is obvious that, in order to complete the form properly, accurate records must be kept by the attorney on each case. These records should be preserved so that they will be available for production when circumstances warrant.*

The Supplemental Voucher Information Form will be required in all cases where counsel is appointed on or after Tuesday, July 10, 1972.

SUPPLEMENTAL VOUCHER INFORMATION

(This form must be submitted with every voucher for compensation under the Criminal Justice Act)

(CJA Form 20.)

Defendant's Name: _____Case No: _____

Attorney's Name: _____

IN OPEN COURT

\* \* \* \* \* \* \* \* \* \*

OUT OF COURT

A. INTERVIEWS AND CONFERENCES

| Name of Person Interviewed | Relation to Case (Witness, Defendant, etc.) | Place of Interview | Date | Time Begun- Time Ended |
|---|---|---|---|---|

B. OBTAINING AND REVIEWING RECORDS

| Record | Where Obtained | Date | Time Begun- Time Ended |
|---|---|---|---|

## C. LEGAL RESEARCH AND BRIEF RECORDS

| Specific Point of Law Researched | Reason for Research (Motion, Trial, etc.) | Date | Time Begun- Time Ended |
|---|---|---|---|

## D. INVESTIGATIVE AND OTHER WORK

| Type of Investigation | Place | Date | Time Begun- Time Ended |
|---|---|---|---|

E. TRAVEL TIME (Travel Time is compensatory only if (1) time spent is at least one hour and (2) it is between 9:00 a. m. and 5:30 p. m., and (3) the sole purpose of the travel is the discharge of the attorney's duty under the Act. The time is to be computed from the attorney's office, not his residence.)

| | Date | Time Begun-Time Ended |
|---|---|---|
| 1. To and From Court | | |
| 2. Other Travel Time | | |

| From | To | Reason | Date | Time Begun- Time Ended |
|---|---|---|---|---|

WAITING TIME (Waiting Time may be compensated, at the out-of-court rates, for time necessarily spent waiting for a proceeding in the case, while physically in the courtroom. If the waiting is for more than one appointed case, the waiting time must be apportioned.)

| Proceeding for Which Waiting | Judge | Date | Time Begun- Time Ended |
|---|---|---|---|

Total: _____

(Enter as "Waiting Time" on Line II D. of CJA Form 20)

Signature of Attorney:

I swear and affirm the truth and correctness of above statements.

| Attorney's Signature | Date |
|---|---|