**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Augustin Alonso LOPEZ,
Defendant-Appellant.**

**No. 84–1391.**

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1985.

Paul J. Kennedy, Albuquerque, N.M., and Theodore R. Naimy, Jr., Los Angeles, Cal., for defendant-appellant.

David N. Williams, Asst. U.S. Atty., (William L. Lutz, U.S. Atty., and Jennifer A. Salisbury, Asst. U.S. Atty., Albuquerque, N.M., with him on brief), for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Augustin Lopez (Lopez) appeals from a judgment and conviction in the United States District Court for the District of New Mexico for violating 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine.

On October 17, 1983, at approximately 4:30 p.m., defendant Lopez was driving a 1978 station wagon bearing California license plates westbound on Interstate 40. He was stopped by the New Mexico State Police at a roadblock located near Santa Rosa, New Mexico. The roadblock had been established to conduct routine checks of drivers' licenses and automobile registrations. Officer Martin Pacheco of the New Mexico State Police approached the vehicle. When Lopez rolled down the window of the car, Officer Pacheco noticed a "strong smell of ether, a sweet smell from the vehicle." (R., Vol. VII at 21.) He then asked for Lopez' driver's license and the automobile's registration. Officer Pacheco also obtained the identification of Dagoberto Jaramillo who was accompanying Lopez and was in the back seat of the vehicle. Officer Pacheco's inspection of the documents revealed that the vehicle was registered in the name of Oscar C. Maia. When Officer Pacheco asked Lopez who owned the automobile, Lopez responded: "The vehicle isn't mine, I'm driving it to California for a friend." (R., Vol. VII at 20.)

Suspecting the vehicle might be stolen, Pacheco asked Lopez to remove the automobile out of the lane of traffic and on to the shoulder of the road. This was done so traffic could proceed while a National Crime Information Center (NCIC) check was run on the vehicle. Pacheco motioned to his partner, Officer Ted Tafoya, to assist in conducting the check. Officer Tafoya took the license and the registration to his patrol car and radioed the New Mexico State Police office to conduct the NCIC check.

While awaiting the results of the NCIC check, Officer Tafoya returned to the station wagon. Officer Tafoya told defendant Lopez that he had detected an ether-like odor in the station wagon. He asked Lopez and Jaramillo if he could search the automobile. Both Lopez and Jarmillo agreed to the search. (R., Vol. VII at 43–44.) The officers found nothing illegal on or under the seats or in the glove compartment of the vehicle. Officer Tafoya then asked Lopez if the officers could search the rear of the station wagon. Again Lopez and Jaramillo consented. Upon examining the rear of the station wagon, the officers found that the Phillips screws holding the speakers on the rear panel had been stripped. Recalling that they had seen Allen screwdrivers in the glove compartment, the officers retrieved and used them to remove the speakers. The ether-like odor became stronger when the left speaker was partially removed. Because the officers did not have a flashlight to look into the speaker compartments, they asked Lopez whether he would accompany them to the State Police office in Santa Rosa so a more thorough search could be conducted. Lopez agreed. (R., Vol. VII at 46–47.)

The officers escorted Lopez and Jaramillo to Santa Rosa, which was approximately one mile from the roadblock. There the officers obtained Lopez' signature on a consent to search form. The officers then removed the left speaker, pointed a flashlight at the space left by the speaker and saw some blue boxes. The officers subsequently placed Lopez and Jaramillo under arrest and read them *Miranda* warnings. Test samples from the contents of each of the eleven boxes seized from the station wagon revealed the presence of cocaine with an average purity of 87.8%.

A federal grand jury indicted both Lopez and Jaramillo. Prior to trial, the defendants moved to suppress all physical evidence taken from the vehicle at the time of their arrest. After an extensive pre-trial hearing, the district court denied the motion to suppress. On February 4, 1984, the jury found Lopez guilty of unlawfully possessing cocaine with the intent to distribute. Co-defendant Jaramillo failed to ap-

pear for trial and is not a party to this appeal.

Lopez raises two issues on appeal. First, Lopez questions the validity of the search and seizure conducted by the New Mexico State Police and the admissibility of any evidence obtained thereby. Second, Lopez asks us to consider whether the trial court erred in refusing to permit co-defendant Jaramillo's attorney from testifying regarding exculpatory statements made to him by Jaramillo in Lopez' presence.

## I.

Lopez contends that his detention and the detention of his vehicle at the roadblock was an unreasonable seizure. First, Lopez contests the validity of the roadblock established by the New Mexico State Police. He maintains that the roadblock was established for purposes other than merely checking vehicle registrations and drivers' licenses. Lopez predicates this argument on statements by Officer Pacheco that the officers were also looking for evidence of illegal activity after the cars were stopped. Lopez maintains that based on Officer Pacheco's statements, the State Police were conducting a multi-purpose roadblock. He argues the effect of a multi-purpose roadblock is to grant impermissible discretion to the police in stopping vehicles along Interstate 40.

We addressed this very argument in *United States v. Prichard,* 645 F.2d 854 (10th Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981), *reh'g denied,* 454 U.S. 1069, 102 S.Ct. 620, 70 L.Ed.2d 605 (1981). There we said, "The purpose of the roadblock, *i.e.,* to check drivers' licenses and car registrations, was a legitimate one. If, in the process of so doing, the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes." *Id.* at 857. Consistent with our reasoning in *Prichard,* we hold that the roadblock maintained by Officers Pacheco and Tafoya was not a multi-purpose roadblock and was lawful. The law does not require the police to ignore evidence of other crimes in conducting legitimate roadblocks, and they may look for evidence which is in plain view.

Lopez also argues that the roadblock must be valid under New Mexico law as well as under federal standards. In *United States v. Lepinski,* 460 F.2d 234 (10th Cir.1972), we found a similar roadblock valid under New Mexico law. *Id.* at 237. Our review of New Mexico law cited by Lopez leads us to conclude that the district court was not clearly erroneous in finding the roadblock valid under both federal and New Mexico law.

Second, Lopez contends that his detention and the detention of his vehicle on the shoulder of the highway after the roadblock stop was an unreasonable seizure. We addressed this issue in *United States v. Obregon,* 748 F.2d 1371 (10th Cir.1984).

In *Obregon,* the New Mexico State Police had established a roadblock to conduct routine driver's license and car registration checks. After the initial roadblock stop, the police requested Obregon to park his car on the shoulder of the road. The police took this action after they determined Obregon was driving a rented car with expired license plates and his name did not appear on the rental contract. *Id.* at 1373. We held that Obregon's detention after the initial roadblock stop was a proper *Terry* investigatory stop because Obregon was detained only when the police became reasonably suspicious that the car might be stolen. *Id.* at 1376.

In the case at bar, Officers Pacheco and Tafoya had reasonable and articulable suspicion that the car might be stolen, justifying Lopez' brief investigatory detention. Lopez argues, however, that because the automobile registration certificate was technically proper, the officers had no basis upon which to detain him. We do not agree. The station wagon operated by defendant in New Mexico bore California license plates. It was not registered to either passenger. The mere presence of the technically proper registration in the glove compartment of the vehicle did not neces-

sarily remove the officers' concern that the vehicle might be stolen. Under these circumstances, the NCIC check was justified. Consequently, in order to run an NCIC check while minimizing the danger to the defendants and to travelers approaching the roadblock, the officers acted reasonably in requesting Lopez to park on the shoulder of the road.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop. Under the *Terry* approach, a court must examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified interference in the first place." *Id.* at 20, 88 S.Ct. at 1879. We find the detention of Lopez on the shoulder of the highway meets the *Terry* test of reasonableness; detaining the defendant while the officers ran an NCIC check was justified under the circumstances. Moreover, detaining the defendant and his vehicle on the shoulder of the road was reasonably related to conducting the permissible NCIC check. Therefore, we find both the initial roadblock stop and the subsequent detention of Lopez to be valid seizures.

## II.

Lopez next contends that the initial search of the vehicle on the shoulder of Interstate 40 was unlawful. The basis of Lopez' argument is that his consent to the search was invalidly obtained.

■■■ One of the specifically established exceptions to the technical requirements for a valid search is the search conducted pursuant to consent. Consent to search is valid if it is voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). Consent to search is voluntary if it is not the product of duress or coercion, express or implied. *Id.* at 227, 93 S.Ct. at 2047–48. This court has set forth the requirements necessary to establish voluntary consent. "(1) There must be clear and positive testi-mony that consent was unequivocable and specific' and 'freely and intelligently' given; (2) the Government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived." *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.1977). *See also United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir.1985). Ultimately, the determination of "voluntariness" for consent cases is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2047–48; *United ed States v. Sor-Lokken*, 557 F.2d 755, 757 (10th Cir.1977), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1977). In reviewing a denial of a motion to suppress, the trial court's finding of fact must be accepted by this court unless clearly erroneous, *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.1984), with the evidence viewed in the light most favorable to the district court's finding. *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir. 1984).

■■■ Upon review of the record we hold the district court's finding that Lopez voluntarily consented to the roadside search was not clearly erroneous. In response to the officers' request to search, both Lopez and Jaramillo agreed to the search, saying they had nothing to hide. (R., Vol. VII at 44.) They stood by and watched as the officers searched the vehicle and at no time objected. The officers never threatened Lopez and Jaramillo. (R., Vol. V at 39.) Their only acts were the initial request to search and the search itself to which Lopez could have objected at any time.

## III.

Lopez next argues that his consent to accompany the police to the State Police office in Santa Rosa, New Mexico, was invalid. Our consideration of this argument requires a review of our analysis and holdings in two recent cases: *United*

States v. *Recalde,* 761 F.2d 1448 (10th Cir. 1985), and *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985).

In *Recalde,* the defendant was stopped by the New Mexico State Police for speeding while driving westbound on Interstate 40. Recalde signed the ticket and said he would pay the fine, a procedure provided under the New Mexico statutes. *See United States v. Gonzalez,* 763 F.2d at 1130, n. 1. Recalde then consented to a roadside search of his car. Although the original purpose of the stop had been completed, the officer did not return Recalde's driver's license or automobile registration. Operating simply on a "gut instinct" that Recalde was transporting narcotics, the officer either requested or told Recalde to follow him to the Moriarty police station so a more complete search could be conducted of Recalde's vehicle. *Recalde,* 761 F.2d at 1451. Recalde, escorted by two police cars, proceeded to the station where he executed a consent to search form. The police search uncovered about ten kilograms of cocaine.

In *Recalde,* we found the initial stop and roadside search of the vehicle was lawful based upon Recalde's voluntary consent. *Recalde,* 761 F.2d at 1455. We relied on several factors, however, to conclude Recalde did not validly consent to accompany the police to the Moriarty, New Mexico police station and to find that his movement into Moriarty "were in all important respects indistinguishable from a traditional arrest." *Id.* at 1456. Among the factors we considered were the following: (1) the police had neither returned the defendant's driver's license and car registration nor indicated they would; (2) Recalde was never told he was free to go; (3) the police had already determined that Recalde would not be permitted to leave in his car; and (4) Recalde was a resident alien and as such could have reasonably felt constrained and unable to simply terminate his confrontation with the police. *Id.* at 1453–54. After reviewing the record, we held not only that Recalde was involuntarily and illegally detained as a result of these factors, but we concluded that the circumstances surrounding the execution of the consent to search form at the Moriarty police station were not sufficiently free of duress and coercion to remove the taint of the illegal detention. *Id.* at 1459.

In *Recalde* we also addressed the Government's argument that even if there was no valid consent for the detention and search at the Moriarty station, the police conduct was valid as a *Terry* investigative detention. We rejected this argument relying principally on *Hayes v. Florida,* —— U.S. ——, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). In *Hayes,* the Supreme Court stated that the full protections of the Fourth and Fourteenth Amendments are triggered "when the police forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Id.,* at ——, 105 S.Ct. at 1644. Applying *Hayes* to the facts in *Recalde,* we held that by moving and detaining Recalde *involuntarily,* i.e. without his consent, and without probable cause, the police exceeded the limits of a lawful investigative detention and violated the Fourth Amendment. *Recalde,* 761 F.2d at 1457.

Similarly, in *United States v. Gonzalez,* the New Mexico State Police stopped Gonzalez for speeding on Interstate 40. Upon approaching the vehicle the officer noticed an "extremely strong odor of some kind of deodorizer" which he said was often used to mask the odor of narcotics. *Gonzalez,* 763 F.2d at 1128. Rather than issue the ticket on the roadside, the officer requested Gonzalez to follow him to a nearby New Mexico police station, a procedure we found exceeded police authority under New Mexico law. Once at the police station, the officer prepared a speeding citation as well as a consent to search form. After issuing the citation and while retaining the car documents, the officer requested the defendant to sign the consent to search form. Gonzalez signed the form and the subsequent search revealed 80 pounds of cocaine.

In *Gonzalez,* we found that in the absence of probable cause, the defendant's movement to and detention at the police station were involuntary and beyond the scope of an investigative stop under *Hayes v. Florida,* —— U.S. ——, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). *Gonzalez,* 763 F.2d at 1132. As in *Recalde,* we held that the facts surrounding the movement of the defendant from the highway to the police station did not constitute valid consent on the part of the defendant to be seized. *Id.* Finally, we held that defendant's signing of a consent to search form was not sufficiently attenuated from the illegal seizure to validate the search at the station valid.

▮ A review of the facts in the case at bar leads us to conclude that *Recalde* and *Gonzalez* are not controlling. First, the outcome in both *Recalde* and *Gonzalez* is limited to their facts. The application of the rule in *Hayes* depended on our conclusion that the defendants in both cases were "forcibly" removed from the highway. That conclusion resulted from our holding that the defendants' consent to accompany the police was involuntary and the police conduct was not supported by probable cause. It is clear that officers Pacheco and Tafoya were armed with probable cause to pursue the search of the vehicle when they requested that Lopez accompany them to the Santa Rosa police station where they could obtain flashlights to look into the speaker compartments. Lopez was aware of the purpose of the additional search. Under these circumstances, we hold that Lopez did voluntarily consent to accompany the officers to the police station. We need not resolve that difficult factual issue. In both *Recalde* and *Gonzalez* we held that there was no showing of probable cause or other basis to justify the police conduct. The Government argues in the case before us that the officers had probable cause prior to leaving the Interstate with defendant Lopez. *Supplemental Brief of Appellee* at 10 n. 3. We agree.

▮ It has long been the rule that warrantless searches are *per se* unreasonable under the Fourth Amendment. *Katz v.* *United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). This rule is subject to few exceptions. One of the exceptions of the warrant requirement, however, is the so-called "automobile exception." This exception operates, for instance, when police officers have probable cause to believe there is contraband inside an automobile stopped on the road, even without a showing of exigent circumstances. *See Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1979); *Carroll v. United States,* 267 U.S. 132, 159, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). Moreover, the search of an automobile on probable cause proceeds on a theory independent from that justifying a search incident to an arrest. "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Carroll v. United States,* 267 U.S. at 158–59, 45 S.Ct. at 287. Under the "automobile exception" then, the police conduct in moving Lopez from Interstate 40 to the Santa Rosa State Police office is proper if it was supported by probable cause.

▮ Before we begin our discussion of the probable cause Officers Pacheco and Tafoya had to seize and search defendant Lopez' vehicle, we must address Lopez' argument that New Mexico law governs warrantless searches. We have previously held that "the test of reasonableness in relation to Fourth Amendment protected rights must be determined by Federal Law even though the police actions are those of state police officers." *United States v. Alberty,* 448 F.2d 706, 708–09 (1971). In *Alberty,* we reversed the federal district court's application of the more restrictive laws of Oklahoma governing searches and seizures in a case involving the defendant's indictment for a federal crime. The validity of the New Mexico police officers' search and seizure of Lopez' vehicle, therefore, depends on whether they had proba-

ble cause under Federal Law. New Mexico law does not apply to this discussion.

We have already established that Lopez' vehicle was properly stopped at a valid roadblock and was detained on the shoulder of the highway pursuant to a valid investigatory stop. *See* I *supra*. In addition, we have held that the roadside consensual search was valid. *See* II *supra*. It was as a result of these activities that Officers Pacheco and Tafoya smelled an ether-like odor emanating from the rear speaker compartment of Lopez' vehicle. We now turn to whether the ether-like odor in the vehicle and the circumstances surrounding its detection were sufficient to establish probable cause.

■ The rules regarding the finding of probable cause for a warrantless search under the "automobile exception" were set out in *United States v. Matthews*, 615 F.2d 1279 (10th Cir.1980).

> The probable cause requirement is satisfied when the officers conducting the search have "reasonable or probable cause" to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search. [citation omitted] And, if after a valid investigatory stop, probable cause then arises, a search may be made. [citation omitted] Finally, in determining whether probable cause existed to search an automobile, the court must evaluate the collective information of all the officers. [citation omitted]

*Id.* at 1287. Probable cause is measured against an objective standard. The facts and circumstances must warrant a prudent man in believing that an offense has been or will be committed. *United States v. Salinas-Calderon*, 728 F.2d 1298 (10th Cir. 1984). More specifically, probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer. *United States v. McCormick*, 468 F.2d 68, 73 (10th Cir.1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973).

■ Applying these standards, we have held that the smelling of marijuana by an experienced observer furnishes probable cause for a search. *United States v. Merryman*, 630 F.2d 780, 784 (10th Cir.1980). Other circuits have also followed this rule. *See, e.g., United States v. Gordon*, 722 F.2d 112, 114 (5th Cir.1983); *United States v. Blasco*, 702 F.2d 1315, 1326 (11th Cir. 1983), *cert. denied*, 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1984); and *United States v. Garcia-Rodriguez*, 558 F.2d 956, 964 (9th Cir.1977), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 802 (1978). We hold that on the facts before us, the officers' smelling of an ether-like substance, which Officer Pacheco associated with the transport of "bulk cocaine," was sufficient to establish probable cause. (R., Vol. IV at 69–70; R., Vol. VII at 21.) Our review of the record reveals that there was sufficient expert testimony on odors emitted from cocaine to support the Government's argument that Officers Tafoya and Pacheco had probable cause to seize and search the Lopez vehicle. (R., Vol. V at 2–20.) These odors, which the officers' reasonably associated with cocaine, coupled with the curious way in which the speakers were fastened onto the rear interior panel of the automobile were circumstances which could cause a prudent and trained officer to reasonably believe a crime was being committed. Therefore, we cannot hold that the district court was clearly erroneous in denying Lopez' motion to suppress.

**IV.**

Lopez' second issue on appeal is whether the trial court erred in refusing to permit co-defendant Jaramillo's attorney from testifying regarding exculpatory statements made to him by Jaramillo in the presence of Lopez. The facts relevant to the disposition of this issue are as follows: Lopez and Jaramillo were indicted on October 25, 1983; Mr. David L. Norvell entered his appearance as counsel for Lopez on November 3, 1983; Jaramillo retained Mr. Jon Kwako as his attorney some time in early November of 1983; and some time shortly

thereafter Mr. Kwako met with Lopez and Jaramillo in the Bernalillo County Detention Center. (R., Vol. VIII at 215–16.) It appears that Mr. Norvell was not present at this meeting. No explanation is given for his absence. Jaramillo subsequently fled the jurisdiction, failed to appear at trial, and remains at large.

At trial, Lopez attempted to have Mr. Kwako testify regarding Jaramillo's alleged exculpatory statements made at the Bernalillo County Detention Center meeting. The district court refused to admit the testimony of Mr. Kwako. As a result, defense counsel made an offer of proof out of the hearing of the jury. The trial judge refused to change his ruling. His grounds for excluding Mr. Kwako's testimony, however, were not stated in the record.

On appeal, Lopez argues that (1) the communication at the meeting between Mr. Kwako and Jaramillo was not confidential because of Lopez' presence without his retained counsel and, consequently, was not protected under the attorney-client privilege; (2) even if the attorney-client privilege protects this communication, only Jaramillo, the declarant, is a holder and may assert the privilege; and (3) Jaramillo's communication is admissible under Rule 804(b)(3) of the Federal Rules of Evidence as a statement against interest. The Government contends that (1) the communication between Jaramillo and Mr. Kwako in Lopez' presence was confidential and subject to the attorney-client privilege; (2) Mr. Kwako could not waive the privilege; and (3) in any event, Jaramillo's statements were inadmissible as hearsay.

 In resolving the issues raised, we must first determine whether the attorney-client privilege applies in this case. Rule 501 of the Federal Rules of Evidence provides that in the federal system, the attorney-client privilege will be governed by the principles of the common law. Fed. R.Evid. 501. An important element of the attorney-client privilege under the common law, and the dispositive element in this case, is whether the communication between the client and the attorney is made

in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence. *Wilcoxon v. United States,* 231 F.2d 384, 386 (10th Cir. 1956). We have held that the burden of establishing the applicability of a privilege rests on the party seeking to assert it. *Matter of Grand Jury Subpoena Duces Tecum,* 697 F.2d 277, 279 (10th Cir.1983). In the case before us, the Government asserted the attorney-client privilege on behalf of Mr. Jaramillo. We need not decide whether the Government could assert the privilege. For purposes of reviewing the issue presented, however, we hold the burden was upon the Government to establish a confidential relationship. The record is void of any evidence establishing such a relationship. In fact, the Government did not offer any evidence in this regard. Mr. Kwako had nothing personal to gain by testifying on behalf of Lopez. His willingness to testify raises a serious question as to whether the communication between he and Jaramillo was confidential. Given the allocation of the burden and the facts of this case, we are unable to find that the communication between Mr. Kwako and Jaramillo in the presence of Lopez was confidential. Consequently, we are unable to hold that the attorney-client privilege applies in this case.

Neither the authorities cited by counsel nor the authorities uncovered by our own research reveal a case identical to the one before us. In several cases, courts have found a confidential relationship to exist despite the presence of co-defendants and their attorneys. *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *Hunydee v. United States,* 355 F.2d 183 (9th Cir.1965). In these cases, the courts found that the communications were among attorneys and their clients for purposes of a common defense. In other cases, courts have found confidential communications between co-defendants and one or more attorneys who had agreed to represent them. In all the cases in which a

confidential relationship was found to exist, the defendants either had retained counsel who were present during the communications or the defendants had not retained counsel but were planning to join the defense team.

We find no evidence in the record to support the Government's argument that the meeting among Mr. Kwako, Jaramillo and Lopez was for the purpose of planning a joint defense. The meeting was held at the request of Mr. Kwako. Lopez had already retained separate counsel. Lopez' counsel was not present at the meeting and there is no evidence in the record to explain his absence. These facts are analogous to the facts in *United States v. Simpson,* 475 F.2d 934 (D.C.Cir.1973), *cert. denied,* 414 U.S. 873, 94 S.Ct. 140, 38 L.Ed.2d 91 (1973). In *Simpson,* the co-defendant's attorney attended a meeting between Simpson and his counsel. The court permitted co-defendant's attorney to testify regarding statements made by Simpson at the meeting. The court found that the co-defendant's attorney had adverse interests to those of Simpson and his counsel and his presence at the meeting precluded the finding of a confidential communication. *Id.* at 936.

Similarly, in *United States v. Melvin,* 650 F.2d 641, 646 (5th Cir.1981) the court ruled that there was no confidential relationship when disclosures were made in a meeting between co-defendants and their attorneys in the presence of a co-defendant who was not represented by counsel and *who had not joined the defense team.* With respect to this co-defendant, the court ruled there was no reasonable expectation of confidentiality. In *Melvin,* defense attorneys contacted co-defendant Powell, who was not yet represented by counsel, and secured his appearance at a defense strategy meeting. Although the defense attorneys did not know that Powell was a Government informant, they were aware that he had not joined the defense team. The court ruled that Powell's presence destroyed the confidentiality of the meeting. The court held that the circumstances indicated the other defendants and their coun-

sel knew or should have known that Powell was not part of the defense team and knew or should have known there was no reasonable expectation of confidentiality in his presence. *Id.* at 646.

 Unfortunately, the record in the instant case is vague. Why and how Lopez became a participant in a meeting between Jaramillo and his attorney is unclear. What is clear is that Lopez was represented by separate counsel who was not present at the meeting. Lopez maintained potentially adverse interests to those of Jaramillo. His retention of separate defense counsel suggests that possibility. Under the circumstances, one could not reasonably assume that the disclosures at the meeting would remain in confidence. Given the facts as they appear in the record, we cannot conclude that the disclosures by co-defendant Jaramillo are protected by the attorney-client privilege. In view of the general rule that an attorney may testify about non-confidential communications, Mr. Kwako should have been permitted to testify.

 Holding, as we do, that the attorney-client privilege does not apply to this case, we must next determine whether Mr. Kwako's testimony would have been admissible. Considering the facts as they appear in the record, we hold that Mr. Kwako's testimony regarding Jaramillo's statements were admissible as statements against interest under Rule 804(b)(3) of the Federal Rules of Evidence.

 A statement against interest is defined as follows:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused

is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3). A threshold requirement for the application of the hearsay exceptions under Rule 804 is a showing that the declarant is unavailable as a witness. Under Rule 804(a)(5) a declarant is unavailable in a situation in which he "is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means." Fed.R.Evid. 804(a)(5). The Government argues that defendant Lopez could not satisfy Rule 804(a)(5) because he failed to show that he attempted to procure Jaramillo's attendance by process or other reasonable means. The law does not require the doing of a useless thing. Declarant Jaramillo was indicted and was scheduled to appear at trial with defendant Lopez. Jaramillo failed to appear at trial and was subsequently indicted for bail jumping. A search warrant was issued, yet federal authorities have been unable to arrest him. Under these circumstances, resort to process cannot be effective. Although the district court did not expressly rule on this issue, the evidence in the record indicates that declarant Jaramillo was unavailable under Rule 804(a)(5).

The Government next argues that statements by Jaramillo were not against his penal interests. The substance of Mr. Kwako's proffered testimony was that: Jaramillo collaborated alone with Oscar Maya and helped him place the boxes containing cocaine into the station wagon; Jaramillo told him that Lopez did not know about these transactions prior to leaving on their journey; and Jaramillo never discussed his activities with Lopez prior to their arrest. We believe that Jaramillo's statements tended to shift criminal liability from Lopez to himself to an extent that a reasonable man in his position would not have made the statements unless he believed them to be true. We believe the record supports a finding that Jaramillo's statements were against his penal interests as defined in Rule 804(b)(3).

Under Rule 804(b)(3), a statement against interest offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate its trustworthiness. The Government argues that Jaramillo's statements are uncorroborated. We believe the evidence sufficiently corroborates Mr. Kwako's testimony. A fingerprint expert testified that Lopez' fingerprints were not on the boxes containing the cocaine, but Jaramillo's fingerprints were discovered on the containers. Given this fact and other facts taken as a whole, we agree with appellant that there was sufficient evidence to satisfy the corroboration requirement of 804(b)(3).

We cannot say that the exclusion of Mr. Kwako's testimony was harmless error. Therefore, while we affirm the district court's refusal to suppress the physical evidence obtained as a result of the New Mexico State Police conduct, we must reverse on the basis of the district court's refusal to admit Mr. Kwako's testimony.

REVERSED AND REMANDED for further proceedings consistent with this opinion.