UNITED STATES of America, Plaintiff–Appellee,

v.

Freddie MAYNES–ORTEGA and Antonio Aguirre–Rodriguez, Defendants–Appellants.

Nos. 87–1874, 87–1876.

United States Court of Appeals, Tenth Circuit.

Sept. 14, 1988.

---

687

William L. Lutz, U.S. Atty., Don J. Svet, First Asst. U.S. Atty., Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, Frances Smylie Brown, Asst. Federal Public Defender, Denver, Colo., for defendants-appellants.

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

Before ANDERSON and BARRETT, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

■ The principal question for decision in this case (submitted on briefs) is whether evidence of drug offenses must be excluded because it was discovered accidentally by officers duly conducting a search for evidence of a different type of offense (transportation of illegal aliens). Appellant also contends that a new trial should have been granted on the ground of newly discovered evidence. We affirm.

Appellants' argument that only when evidence is relevant to the offense for which the search is made may it be used in court flies in the face of common sense and public policy.

It may illuminate the situation to recount an incident from the era when the writer of this opinion was a government attorney in the Department of Justice, engaged in the defense of appeals from orders of the Interstate Commerce Commission. With a colleague who was Assistant General Counsel of the Commission I was on a train from Washington to Boston, where we were to appear before a statutory three-judge District Court.[1] In the dining car we shared a table with a grim, portly tycoon (it developed that he was a shipbuilder) and his gracious, loquacious wife. She announced pleasantly that they had just come from the office of their lawyer in Philadelphia (an eminent practitioner with whom I was acquainted) where they had settled their tax case. The husband reproachingly admonished her: "These are Government Men." I replied: "Never mind. Our field of expertise is the Interstate Commerce Act. We wouldn't know a tax case if we saw one." And so our lunchtime conversation merrily continued.

Such "bureaucratic blinders" (the normal consequence of inertia and the limitations

1. Such courts were created by the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 208, 219–21, which abolished the ill-starred Commerce court. Now such appeals go to Circuit Courts of Appeals. 28 U.S.C. 2321(a).

of the human intellect) appellants would freeze into a rule of law restricting the sensible functioning of judicial procedure.

The awkward paralysis of criminal investigation and judicial administration that would flow from appellants' rule brings to mind a proposal once made by Newton D. Baker, former Secretary of War, in connection with negotiations for reduction of naval armaments. To meet objections that different nations had navies with different numbers of ships, and in order to maintain substantial parity of strength, Baker made the proposal that the United States should be allowed to build certain war vessels which were to be used only against nations having the largest navies, and were not to be used against nations with weaker fleets. This proposal was disregarded as impracticable and unworkable.

To require prosecutors to use only evidence related to a particular offense of which they had specifically suspected the defendant and had consequently obtained in the course of searches and seizures aimed at that particular crime would be a grotesque parody of efficient law enforcement. It would be as burdensome and unworkable as the battleship usable only against certain nations to proscribe the use of evidence against crimes other than those of which a defendant had previously been suspected of being guilty. In Biblical times, appellants' theory would have excluded Saul from kingship in Israel, since he was seeking the lost asses of Kish, his father, and he found, through Samuel, a kingdom.[2]

Tenth Circuit law teaches that evidence serendipitously obtained by unexpected good fortune need not be excluded. *U.S. v. Guglielmo*, 834 F.2d 866, 868 (10th Cir. 1987), is apposite. There a defendant was stopped for speeding. The Wyoming state trooper, while making out the ticket, seated beside the defendant in the patrol car, smelled marijuana. With defendant's permission the car was then searched and mar-

ijuana discovered. The evidence was held admissible.

Likewise, *U.S. v. Lopez*, 777 F.2d 543, 547 (10th Cir.1985), clearly holds that when engaged in lawful enforcement activities "the law does not require the police to [close their eyes and] ignore evidence of other crimes ... and they may look for evidence which is in plain view."

To justify the District Court's ruling admitting the drugs found in plain view in the trunk of appellants' car, it remains only to show that the search for illegal aliens was not unreasonable, but complied fully with the requirements of *U.S. v. Leyba*, 627 F.2d 1059, 1062–63 (10th Cir.1980), which the District Judge applied. Briefly summarizing the pertinent facts which justified the border patrol in stopping the car in which the marijuana was found, we note the following circumstances:

The place where the border patrol stopped the car was on Route 11, running directly from the Mexican border through Columbus, New Mexico, to Deming, New Mexico. It was a well known smuggling route. The agent, Roberto Correo, had been involved in 25 smuggling cases, and had arrested more than 100 illegal aliens, along Route 11. The car, a 1968 Plymouth Fury, was of the type usually used for smuggling aliens; a large vehicle, with capacity to carry a large number of illegals on one trip, and sufficiently run-down that if seized and condemned the financial loss to the smuggler would be small.

The agent observed that the car appeared to be riding low in the back, as if illegals were concealed in the trunk.[3]

Appellant Maynes was driving; appellant Aguirre was a passenger. They appeared to be nervous and avoided eye contact with the agent.

Maynes gave permission to search the trunk, but claimed that he did not have the key, since he was just driving the car for an unknown illegal alien, and his instructions were to drive the car to a destination

---

**2.** 1 Sam. 9:13, 10:1.

**3.** This circumstance is often a symptom in the Pennsylvania "moonshine" area that a cargo of "mountain dew" is being hauled.

in Deming where he would be paid for his trouble.

Another agent observed the key in plain view between the front seats of the car, and used it to open the trunk, where six military duffel bags smelling of marijuana were visible (they contained about 200 pounds of the drug).

Plainly the circumstances showed valid consent to the search by the driver, appellant Maynes. According to his own story, he was driving on behalf of an owner he did not know,[4] except that he was an illegal alien. Any conflicts regarding the fact of consent by Maynes were resolved by the trial judge and will not be considered *de novo* on appeal. The "clearly erroneous" standard applies.[5]

■ Appellants advance the somewhat preposterous argument that the consent given by appellant Maynes to search the car was invalid because when he gave it he thought that such consent would be futile since he did not have the trunk key. This contention has as hollow a ring as would that of a defendant in a child support case who sought to escape liability because he thought he was impotent at the time he consented to a contract of marriage. We are not persuaded by flimsy reasoning of that sort to adopt an unwise rule of law which would make the validity of consent depend upon such a subjective standard.

Accordingly the District Court's refusal to suppress evidence must be affirmed.

Appellants also contend that it was error to deny a new trial based upon newly discovered evidence. This issue is equally unsubstantial.

■ Appellants testified that when they went to Columbus to start the car for Felipe Acano and bring it to Deming, they found the car (which Jesse Bencomo claimed she had sold to Acano) on the shoulder of the road in front of a church.

At the trial Oscar Flores, a border patrol agent, testified as a rebuttal witness for the government, that it was probably impossible to park a car at that place without the car being half in the ditch or obstructing traffic.

The "newly discovered evidence" on which appellants relied consisted of photographs of a car parked there. Obviously the evidence can not be considered as newly discovered, since appellants had known where they picked up the car ever since the day when they started the engine and started driving toward Deming.[6] Moreover, the place where their trip began is totally irrelevant to their guilt or innocence of possession of marijuana with intent to distribute (the crime of which they were convicted)[7] at the time they were stopped by the border patrol. The new evidence was at best merely impeachment on an immaterial issue, and could not possibly have resulted in a different verdict, even if it convinced the jury that the testimony of Oscar Flores should be completely disregarded.

Thus the supposedly newly discovered evidence upon which appellants rely falls short of the requirements set forth in our case law.

The requirements for granting a motion for a new trial in a criminal case based on newly discovered evidence are well established. The alleged newly discovered evidence must be more than im-

---

4. The car was registered to Maynes's live-in girlfriend Jesse Bencome, appellant Aguirre's sister, who claimed to have sold the car to one Felipe Acano, a Mexican. Her daughter Gloria Arrey, told appellants to go to Columbus and bring the car to Deming. She gave Maynes the ignition key and promised $30 for bringing the car. Maynes had to use jumper cables to start the car, which they found in front of a church in Columbus.

5. *U.S. v. Lopez,* 777 F.2d 543, 548 (10th Cir. 1985).

6. As held in *U.S. v. Allen,* 554 F.2d 398, 403 (10th Cir.1977), evidence can not be considered as "newly discovered" if it could have been discovered prior to trial through exercise of diligence on the part of defendants or their counsel.

7. If there had been a charge of conspiracy with Felipe Acano, and a material question as to whether they had really begun the trip at his home in Mexico rather than at Columbus, there might have been some point to appellants' argument.

peaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered and produced at the original trial. The motion is not regarded with favor and should be granted only with great caution, being addressed to the sound discretion of the trial court. *Id.* The decision of the trial court will not be disturbed unless there has been an abuse of such discretion.

(*U.S. v. Sutton,* 767 F.2d 726, 728 (10th Cir.1985)]  [8]

Accordingly, there was no error or abuse of discretion when the trial court denied appellants' motion for a new trial.

For the foregoing reasons the judgment of the District Court is

AFFIRMED.

---

**8.** This statement of the law is quoted in *U.S. v. Page,* 808 F.2d 723, 732 (10th Cir.1987).