UNITED STATES of America, Appellee,

v.

Carlos SARO, a/k/a Cristobal, Appellant.

No. 00–3005.

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 2001.

Decided June 12, 2001.

A. J. Kramer, Federal Public Defender, appointed by the court, argued the cause and filed the briefs as amicus curiae on the side of appellant.

Carlos Saro, appearing pro se, was on the briefs for appellant.

Matthew E. Sloan, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, Robert D. Okun and John P. Dominguez, Assistant U.S. Attorneys. Mary-Patrice Brown, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Carlos Saro seeks relief from the district court's denial of his motion for leave to file a motion to vacate his sentence. Although the procedural complexities of this case require some discussion, we conclude that the district court was plainly correct in ruling that Saro's motion was time-barred. We therefore cannot grant Saro's request for relief.

## I

In May 1991, Saro was convicted in the United States District Court for the District of Columbia on five counts of distribution of and conspiracy to distribute cocaine base, and was sentenced to life imprisonment. In 1994, we denied his appeal and affirmed his convictions and sentence. *United States v. Saro,* 24 F.3d 283 (D.C.Cir.1994). Saro did not seek certiorari from the Supreme Court.

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) amended § 2255 to impose a "1–year period of limitation" on motions brought under that section. Pub.L. No. 104–132, § 105, 110 Stat. 1214, 1220 (1996). In *United States v. Cicero,* we held that prisoners like Saro, whose convictions became final before AEDPA's effective date, had a one-year grace period from that date in which to file a § 2255 motion—yielding a filing deadline of April 24, 1997. *See* 214 F.3d 199, 202 (D.C.Cir.2000).

On August 27, 1997—four months after that deadline—Saro mailed a pro se pleading to the district court entitled "Motion for Leave to File a Title 28 U.S.C. § 2255." He did not attach a substantive § 2255 motion to this pleading, nor did he give any indication of the nature of his underlying claims. Instead, Saro sought an extension of time in which to file a § 2255 motion, based on the defalcation of his attorney. Saro stated that in late 1996 or early 1997, he contacted attorney Patrick L. Brown about filing a motion on his behalf. According to Saro's pleadings and attached correspondence, Brown told him that the deadline for filing the motion was April 24, 1997, and that Brown would not start working on the motion until Saro paid him a retainer. Brown wrote Saro on March 24, 1997, saying that he had not yet received the agreed-upon fee and advising Saro to send it quickly in light of the impending deadline. Saro mailed Brown a payment on March 28, 1997. Saro never heard from Brown again, and by May 30, 1997, Saro confirmed through correspondence with the clerk of the district court that Brown had not filed the § 2255 motion. On July 31, 1997, Saro filed a complaint with the Disciplinary Counsel of the Supreme Court of Ohio, the bar of which Brown was a member. *See* Mot. for Leave to File at 1–2, Ex. 2.[1]

On April 30, 1998, the district court denied Saro's motion for leave to file on the ground that it was "time-barred because it was filed significantly more than a year

---

1. Saro subsequently advised the district court that Brown had been disbarred by the Ohio Supreme Court.

after the enactment of the AEDPA." *United States v. Saro,* No.90–cr–449, slip op. at 2 (D.D.C. Apr. 30, 1998) ("April 1998 Order"). In response to Saro's argument that the limitations period should be tolled because of his lawyer's malfeasance, the court concluded that there were "no 'extraordinary circumstances' ... which would justify equitable tolling." *Id.* The court explained that although Saro had learned of Brown's failure to file by May 30, 1997, he did not submit his motion for leave to file until three months later. Moreover, Saro offered "no explanation for this three-month delay." *Id.*

■ Saro responded to the court's order with a series of motions seeking reconsideration, all of which the court denied. Saro subsequently asked the district court to issue a Certificate of Appealability (COA), required by 28 U.S.C. § 2253(c) to appeal "the final order in a proceeding under section 2255." The district court denied this request as well. Saro filed notices of appeal from one of the district court's denials of reconsideration and from its denial of a COA.[2] We consolidated the notices of appeal and appointed the Federal Public Defender as amicus curiae to present arguments on Saro's behalf.[3]

## II

■ As amended by AEDPA in 1996, 28 U.S.C. § 2253 states: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1); *see* Pub.L. No. 104–132, § 102, 110 Stat. 1214, 1217 (1996). When a COA is required, we treat a notice of appeal as an application for a COA. *See United States v. Mitchell,* 216 F.3d 1126, 1130 (D.C.Cir.2000); *see also* Fed. R.App. P. 22(b); *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Although Saro applied for a COA in the district court, he now contends that no COA is required to hear his appeal because the district court's April 1998 decision was not "the final order in a proceeding under section 2255," but rather was merely the denial of leave to file a § 2255 motion. The United States contends that a COA is required because that decision was in fact the final order in a § 2255 proceeding.

■ If a COA is required, it is a prerequisite to our consideration of Saro's appeal. *See* 28 U.S.C. § 2253(c); *Slack,* 529 U.S. at 485, 120 S.Ct. 1595. Thus, we may not simply assume that a COA is *not* required and proceed to the merits of Saro's claim.

2. Although there might otherwise be questions concerning the timeliness of these notices of appeal, the United States agrees that both were timely filed, as was the application to the district court for a COA, because none of the orders entered by the district court complied with the "separate document" requirement of Federal Rule of Civil Procedure 58. *See* Fed.R.Civ.P. 58 (providing that "[e]very judgment shall be set forth on a separate document," and that a "judgment is effective only when so set forth"); *United States v. Feuver,* 236 F.3d 725, 727–28 & n. 4 (D.C.Cir. 2001) (noting government's concession that Rule 58 applies to § 2255 proceedings); *Kidd v. District of Columbia,* 206 F.3d 35, 39–40 (D.C.Cir.2000) (discussing standard for satis-

fying requirements of Rule 58). While the time limit for filing a notice of appeal does not begin to run until the district court files a judgment that conforms with Rule 58, this court has jurisdiction to decide an appeal filed before entry of a conforming judgment. *See Pack v. Burns Int'l Sec. Serv.,* 130 F.3d 1071, 1072–73 (D.C.Cir.1997).

3. Both parties agree that resolution of the issues raised by the notice of appeal from the district court's denial of a COA will resolve this case in its entirety. Hence, we need not delve into the procedural problems surrounding Saro's appeal from the court's earlier denial of reconsideration.

*Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that federal courts must determine that they have jurisdiction before turning to the merits of a case). We may, however, assume that a COA *is* required, and then proceed to consider whether Saro can satisfy the requirements for issuance of a COA. *Cf. Slack,* 529 U.S. at 485, 120 S.Ct. 1595 (holding that "[e]ach component of the § 2253(c) showing is part of a threshold inquiry"); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584–85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding that jurisdictional questions may be resolved in any order). Whether such an approach is fair to Saro if in fact no COA is required for his appeal is, of course, another question—which we address in Part III below.

■ Under § 2253, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel,* the Supreme Court held that when a "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. at 478, 120 S.Ct. 1595. The *Slack* test applies to Saro's case, because the district court denied Saro's motion solely on the procedural ground that it was barred by the statutory deadline.

The government contends that Saro cannot meet the first requirement of the *Slack* test—a debatable claim of the denial of a constitutional right—because Saro has never described the nature of his underlying constitutional claim. In response, Saro contends that the requirement of a debatable constitutional claim cannot be applied literally in a case like his, where the underlying § 2255 motion was never filed because the district court denied leave to file. We need not resolve this dispute regarding *Slack's* first requirement, however, because it is quite clear that Saro cannot meet *Slack's* second requirement: that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.[4]

■ The government asks us to hold that reasonable jurists would not dispute the correctness of the district court's ruling that Saro's motion was time-barred, both because equitable tolling never applies to proceedings under § 2255, and because even if the doctrine does apply, malfeasance by a prisoner's attorney does not constitute the "extraordinary circumstances" necessary to bring the doctrine into play. *See Cicero,* 214 F.3d at 203 (holding that if equitable tolling applies to § 2255, tolling is warranted only "if extraordinary circumstances beyond a prisoner's control" prevented him from filing by the statutory deadline).[5] We need not

---

**4.** In *Slack,* the Supreme Court advised courts of appeals that: "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent. . . . The recognition that the 'Court will not pass upon a constitutional question . . . if there is also present some other ground upon which the case may be disposed of,' . . . allows and encourages the court to first resolve procedural issues." 529 U.S. at 485, 120 S.Ct. 1595 (quoting *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)).

**5.** *Cicero* found it unnecessary to decide whether equitable tolling applies to § 2255 proceedings because the circumstances cited by the prisoner did not qualify as "extraordinary." 214 F.3d at 203.

reach either such conclusion to resolve this case. Even if § 2255's period of limitations is subject to equitable tolling, and even if the malfeasance of Saro's lawyer qualifies for tolling, the amount of time tolled would not excuse Saro's three-month delay after he learned of his lawyer's failure to file.

The Supreme Court has explained that "[p]rinciples of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." *United States v. Ibarra,* 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). Saro's pleadings indicate that he did not engage Brown to file the § 2255 motion until, at the earliest, March 28, 1997—the date he sent the payment that Brown told him was necessary for work to begin. Accordingly, even if Brown's defalcation is the kind of "extraordinary circumstance" that warrants tolling, the earliest date upon which tolling could begin was March 28—at which point Saro had approximately one month remaining before the April 24, 1997 filing deadline. Saro's pleadings also make clear that he knew Brown had failed to file the § 2255 motion no later than May 30, 1997, when Saro received confirmation from the district court clerk that no filing had been made. Thus, May 30 was the latest date upon which the time bar would begin to run again, at which point principles of equitable tolling would leave Saro with another month—until the end of June—to make his § 2255 filing with the district court.[6] Saro, however, did not file within a month of learning of his lawyer's malfeasance. Instead, he waited three months—until the end of August 1997— missing even an equitably extended deadline by two months.

■ Saro contends that this should not be the end of our inquiry, and that we should extend the limitations period through the date of his August filing, or at least remand for a hearing into the circumstances of this additional delay. Had Saro offered an explanation for the additional delay, he might have an argument in this regard. But it is Saro's burden to establish that equitable tolling is warranted,[7] and he has offered no explanation for his failure to file even a request for an extension of time during the three months from May through August: not in his multiple pleadings in the district court, and not in any subsequent pleading on appeal.[8] As noted above, this circuit held in *Cicero* that if equitable tolling applies at all under § 2255, it applies only in "extraordinary circumstances." 214 F.3d at 203. More-

---

6. See *Ibarra,* 502 U.S. at 4 n. 2, 112 S.Ct. 4 ("[F]or example, a motion to reconsider filed after 20 days, if it tolled the 30–day period to appeal, would leave at most only 10 days to appeal once the reconsideration motion was decided."). The new deadline may be calculated in an equivalent way by tacking the length of the tolled period—that is, the period from March 28 to May 30—onto the original limitations deadline of April 24, 1997.

7. See *Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir.2000) (noting that "the party seeking to establish tolling typically carries that burden," and applying that rule to equitable tolling under AEDPA); *Bayer v. United States*

*Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir. 1992) (holding that a Title VII plaintiff bears the burden of establishing his entitlement to equitable tolling).

8. Saro has offered no explanation notwithstanding that the district court repeatedly stated that it could not grant relief because Saro had failed to explain the three-month delay. See *United States v. Saro,* No. 90–cr–449, slip op. at 4 n.2 (D.D.C. July 23, 1999); *United States v. Saro,* No. 90–cr–449, slip op. at 3 (D.D.C. June 25, 1998); *United States v. Saro,* No. 90–cr–449, slip op. at 2 (D.D.C. Apr. 30, 1998).

over, the *Cicero* court rejected as insufficiently extraordinary the fact that a prisoner's preparations for filing during the final months of the AEDPA grace period were interrupted when he was stabbed and hospitalized, and when his legal papers became unavailable because he was transferred to a different prison. *Id.* at 201. It must follow that when a prisoner proffers no reason whatsoever for his failure to file by an already-extended deadline, additional equitable tolling is plainly unwarranted and the district court need conduct no further factfinding on the subject. *See generally id.* at 204 (declining to remand to the district court for additional factfinding).

■ In sum, we conclude that the district court was plainly correct in holding that there were "no 'extraordinary circumstances' . . . which would justify equitable tolling" sufficient to render Saro's filing timely in this case. April 1998 Order at 2.[9] Moreover, this result is so clear, particularly in light of the absence of any explanation for Saro's failure to file for three months after learning of his lawyer's failure to file, that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 478, 120 S.Ct. 1595. Accordingly, Saro is ineligible for a COA. *See id.*

## III

■ To this point, our analysis has proceeded upon the assumption that Saro requires a COA in order to appeal the district court's denial of his motion for leave to file a § 2255 motion. Saro objects that such an assumption is unfair to him, arguing that a COA is only required to appeal from the denial of a § 2255 motion, and not from the denial of a motion to file such a motion. Saro's objection to our analytical approach would rest on firm ground, and hence require a resolution of whether a COA is actually required in this case, if the standard for reviewing a COA application were less favorable to him than the standard for reviewing an appeal.[10] But the COA standard is not less favorable, and Saro's objection is therefore misplaced.

Our conclusion that Saro does not qualify for a COA turned on the correctness of the district court's ruling that Saro's out-of-time filing could not be saved by the doctrine of equitable tolling. But just as that procedural ruling was the central issue in our COA analysis, so too would it be were the case analyzed as an appeal. Moreover, the standard for reviewing the correctness of that ruling on an application for a COA is *more* favorable to Saro than is the standard for reviewing the merits of an appeal. To qualify for a COA: "[T]he petitioner need not show that he should

**9.** We have examined whether the court was "correct," rather than whether it "abused its discretion," because we employ de novo review when a district court holds—as the court appears to have done here—that the facts cannot justify equitable tolling as a matter of law. *See Smith–Haynie v. Dist. of Columbia,* 155 F.3d 575, 578 n. 4 (D.C.Cir.1998) (noting that "the doctrine of equitable tolling ordinarily involves discretion on the trial judge's part," but employing de novo review because the district court found as a matter of law that the facts "could not support invocation of the equitable tolling doctrine"); *see also Dunlap*

*v. United States,* 250 F.3d 1001, 1007–08 & n. 2 (6th Cir.2001) (reviewing a district court's § 2255 equitable tolling decision de novo, where the district court declined to grant tolling as a matter of law).

**10.** For example, had Saro's COA application foundered upon the first of *Slack*'s requirements—that he have a debatably valid claim of the denial of a constitutional right—he would have reason to complain, because such a requirement would not typically apply on appeal from a district court's denial of a motion to file out of time.

prevail on the merits.... Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Mitchell,* 216 F.3d at 1130 (alterations and emphasis in original) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). As we have held in Part II, Saro cannot meet even this liberal standard. Accordingly, he necessarily would fail on the merits were we to treat his notice as an appeal rather than as an application for a COA.

### IV

For the foregoing reasons, Saro's appeal, treated as an application for a COA, is

*Dismissed.*