Gary WYCHE, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CIV.A.01–1585(RMU).
No. CRIM.A. 89–0036–05(HHG).

United States District Court,
District of Columbia.

April 23, 2004.

Eric B. Marcy, Janice Kaye Myhand, John Michael Facciola, U.S. Attorney's Office, Lynn E. Haaland, U.S. Attorney's Office, Special Proceedings Section, Washington, DC, for Petitioner.

Robert Ernest Sanders, Punta Gorda, FL, Santha Sonenberg, D.C. Public Defender Service, Washington, DC, for Defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE PETITIONER LEAVE TO FILE AN AMENDED SECTION 2255 MOTION; DENYING THE PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING THE RESPONDENT'S MOTIONS TO DISMISS; AND DENYING THE PETITIONER'S SECTION 3582 MOTION

## I. INTRODUCTION

The *pro se* petitioner initiated this habeas action by filing a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The matter now comes before the court on the respondent's motions to dismiss as untimely the petitioner's section 2255 motion. Also before the court are the petitioner's motions for leave to file his amended section 2255 motion, for the appointment of counsel pursuant to section 2255 and 18 U.S.C. § 3006A(a)(2)(B), and for modification of his sentence under 18 U.S.C. § 3582(c). The court grants the petitioner leave to file his amended section 2255 motion to allow for a final resolution of the case. In addition, the court denies the petitioner's motion for appointment of counsel because such relief is not in the interests of justice. Furthermore, the court grants the respondent's motions to dismiss because the applicable statute of limitations bars the petitioner from asserting his section 2255 claims. Finally, the court denies the petitioner's section 3582 motion because he

presents no argument supporting his conclusory allegation that the sentencing judge failed to follow proper sentencing procedures.

## II. BACKGROUND

The petitioner participated in an organization responsible for importing cocaine from New York City and distributing it here in the District of Columbia. *United States v. Harris*, 959 F.2d 246, 249 (D.C.Cir.1992) (per curiam). At the end of his trial in the summer of 1989, a jury found the petitioner guilty of conspiracy to distribute and possession with the intent to distribute cocaine and cocaine base, conspiracy to carry and use firearms during and in relation to a drug-trafficking offense, use of juveniles in drug trafficking, assault with a dangerous weapon, unlawful use of a firearm in aid of drug trafficking, and unlawful possession of a firearm by a convicted felon. Pet'r Am. § 2255 Mot., Ex. A ("PSR") at 12. At his sentencing, another member of this court grouped together all of the counts—with the exception of the count for unlawful use of a firearm in aid of drug trafficking—under the conspiracy count, thereby sentencing the petitioner to a life term of imprisonment. *See generally* Sentence Tr. ("Tr."). As for the use-of-a-firearm count, the court sentenced the petitioner to a consecutive five-year imprisonment term followed by a ten-year term of supervised release. *Id.*; *Harris*, 959 F.2d at 266.

The petitioner appealed his sentence in part on the ground that the district court "miscalculated the base offense level for his drug conspiracy conviction" by failing to correctly determine the amount of drugs for which the defendant was ac-

countable. *Harris*, 959 F.2d at 264. The D.C. Circuit found merit in the petitioner's argument and remanded the case for the district court to verify the attributable drug amount. *Id.* at 264–65. On remand, the district court determined that the petitioner was responsible for more than 500 grams of cocaine. Cr. Docket No. 89–0036–05(HHG). Utilizing this drug amount, the district court re-calculated the petitioner's base offense level and imposed the same sentence as before the appeal. Tr. at 11–12; Resp't Supp'l Mot. at 2. The petitioner once again appealed, but this time the D.C. Circuit affirmed the sentence on November 12, 1993. *United States v. Wyche*, 10 F.3d 13 (D.C.Cir.1993).

On April 22, 1996, the petitioner initiated a habeas action by filing a motion to vacate his sentence under 28 U.S.C. § 2255. The petitioner, however, moved the court to dismiss that case, and the sentencing judge granted his motion for voluntary dismissal on June 2, 1997. Cr. Docket No. 89–0036–05(HHG).

■ Sometime before June 27, 2001, the petitioner dropped a "placeholder" section 2255 motion in the prison mail collection box, which the Clerk of the Court deemed filed on June 29, 2001.[1] Traverse I at 2; Resp't Supp'l Mot. at 3. On the heels of that submission, the petitioner moved for leave to file an amended section 2255 motion.

Subsequently, on July 9, 2001, the petitioner moved for appointment of counsel under 18 U.S.C. § 3006A(a)(2)(B) and 28 U.S.C. § 2255. Several days later, the petitioner lodged his proposed amended section 2255 motion, arguing that a retroactive application of the Supreme Court's

---

1. In the context of section 2255 motions, a "placeholder" motion is a "skeletal document [filed] to satisfy the period of limitations, with the plan of filing a real petition later." *Ellzey v. United States*, 324 F.3d 521, 523 (7th Cir.

2003). As noted, the petitioner did not file his placeholder motion until more than five years after the dismissal of his original habeas petition.

decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), calls for vacating either his conviction or his sentence. Pet'r Am. § 2255 Mot. at 25–26. The petitioner also alleges ineffective assistance of counsel during trial and the direct-appeal process. *Id.* at 11–15, 26.

On February 8, 2002, the Calendar Committee assigned the case to this member of the court. On February 25, 2002, the respondent filed a motion to dismiss the petitioner's placeholder motion as untimely under the applicable statute of limitations. Resp't Mot. at 2–3.

The petitioner then proceeded to submit several supplemental filings. First, in July 2002, he filed a notice of supplemental authority. Next, in March 2003, the petitioner filed two submissions, each styled as a "traverse." Traverse I; Traverse II. Then, in May 2003, he filed a motion for modification of his sentence pursuant to 18 U.S.C. § 3582(c), claiming that a retroactive application of a reduction in the U.S. Sentencing Guidelines entitles him to a lesser sentence. Pet'r § 3582 Mot. at 3.

Soon thereafter, the respondent filed a supplemental motion to dismiss, which addresses the petitioner's amended section 2255 motion and traverses, along with an opposition to the petitioner's section 3582 motion. On October 16, 2003, the petitioner followed up with a third traverse, arguing that the principle of equitable tolling prevents the running of the statute of limitations on his section 2255 claims, and that due process requires a retroactive application of *Apprendi.* Traverse III at 4, 12. The court now addresses the pending motions.

2. The petitioner does not seek legal representation for his section 3582 challenge. *See*

## III.  ANALYSIS

### A.  The Court Grants the Petitioner Leave to Amend His Section 2255 Motion

The petitioner moves for leave to file an amended section 2255 motion. Given that the petitioner's placeholder motion attempts only to preserve the timeliness of his subsequently lodged amended section 2255 motion, the court deems it necessary to allow his amended motion to resolve the *Apprendi* issue, which comprises the central dispute between the parties. The petitioner's proposed amendment does not disadvantage the respondent because the respondent has briefed its arguments against the petitioner's amended motion in its supplemental motion to dismiss, demonstrating its anticipation that the court would permit the amendment. Moreover, principles governing *pro se* matters oblige the court to relax procedural rules in favor of the petitioner. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C.Cir. 1993). Accordingly, the court grants the petitioner leave to file his amended motion and addresses the arguments presented therein.

### B.  The Court Denies the Petitioner's Motion for Appointment of Counsel

The petitioner also requests that the court appoint counsel to represent him on his section 2255 claims.[2] Pet'r Appt. Mot. at 1. The court may appoint counsel to a section 2255 petitioner if the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C. § 2255 ¶ 7. While the D.C. Circuit has not provided guidance on this particular point, other circuits require a district court to evaluate

*generally* Pet'r Appt. Mot.

"the likelihood of success on the merits" of the petitioner's section 2255 claims, taking into account the petitioner's ability to articulate his claims "in light of the complexity of the legal issues involved." *E.g., Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir.1983) (per curiam) (citations omitted). The petitioner fails to demonstrate how the interests of justice require the appointment of counsel when, as the court explains below, not even the most effective counselor could successfully refute that the statute of limitations bars the petitioner from proceeding with his section 2255 challenge. Without the petitioner's ability to litigate these claims, it would be a mismanagement of judicial resources and taxpayer dollars to appoint him counsel. *E.g., Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir. 1985) (denying appointment of counsel when the issues before the court are so well-settled that "supplemental briefing by counsel would not assist the court and would be an inefficient use of judicial resources"). At this stage, counsel would be as beneficial to the petitioner as would a key to a door with no lock. Because the petitioner has failed to show that the interests of justice require the appointment of counsel, the court denies the petitioner's motion. With these threshold matters now resolved, the court moves on to address the parties' substantive motions.

## C. The Court Grants the Respondent's Motions to Dismiss

### 1. Legal Standard for Relief Under 28 U.S.C. § 2255

A petitioner may challenge the validity of his imposed sentence under 28 U.S.C. § 2255. 28 U.S.C. § 2255; *see also United States v. Marshall,* 440 F.2d 195, 200 (D.C.Cir.1970) (MacKinnon, J., concurring in part and dissenting in part) (noting that a petitioner may question the validity of his sentence by filing a section 2255 motion before the trial court); *Go-*

*mori v. Arnold,* 533 F.2d 871, 875 (3d Cir.1976) (stating that a challenge to an imposed federal sentence falls under section 2255, while a challenge to a sentence executed by federal prison and parole authorities comes under section 2241). Section 2255 authorizes the sentencing court to discharge or resentence a prisoner if the court concludes that it was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (citing *United States v. Hayman,* 342 U.S. 205, 216–17, 72 S.Ct. 263, 96 L.Ed. 232 (1952)). A petitioner can collaterally attack his sentence under section 2255 where the sentencing judge made an "objectively ascertainable error." *King v. Hoke,* 825 F.2d 720, 724–25 (2d Cir.1987) (citing *Addonizio,* 442 U.S. at 187, 99 S.Ct. 2235). Nevertheless, the petitioner seeking to vacate his sentence shoulders the burden of sustaining his contentions by a preponderance of the evidence. *United States v. Simpson,* 475 F.2d 934, 935 (D.C.Cir.1973); *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980); *United States v. DiCarlo,* 575 F.2d 952, 954 (1st Cir.1978); *Crail v. United States,* 430 F.2d 459, 460 (10th Cir.1970); *Miller v. United States,* 261 F.2d 546, 547 (4th Cir.1958). Relief under section 2255 is an extraordinary remedy. *Addonizio,* 442 U.S. at 184, 99 S.Ct. 2235; *United States v. Pollard,* 959 F.2d 1011, 1020 (D.C.Cir.1992); *United States v. Hodges,* 156 F.Supp. 313, 314 (D.D.C.1957) (Sirica, J.).

### 2. The Statute of Limitations Bars the Petitioner's Section 2255 Claims

Prior to 1996, "a prisoner could challenge his conviction or sentence as a violation of the Constitution of the United

States by filing a motion under 28 U.S.C. § 2255 at almost any time." *United States v. Cicero*, 214 F.3d 199, 200 (D.C.Cir.2000) (citing *Mickens v. United States*, 148 F.3d 145, 146 (2d Cir.1998)). In 1996, however, the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2255 to impose a one-year statute of limitations on the filing of a section 2255 motion. *Id.* at 200–01; 28 U.S.C. § 2255 ¶ 6. As the statute provides,

> The limitation[s] period shall run [one year] from the latest of:(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; (4) or the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The instant case implicates review under the first and third of these formulae. As explained below, however, the petitioner's efforts to seek shelter under these statutory umbrellas are unavailing.

### a. Finality of Judgment of Conviction

■ As to the first formula, a petitioner's judgment of conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (noting the "long-recognized, clear meaning" of finality under section 2255). A review of the appellate and trial dockets and the customary research databases reveals the absence of any record indicating that the petitioner filed a certiorari petition or, for that matter, that the Supreme Court affirmed his conviction on the merits. Neither party addresses this point. Without any proof to the contrary, the court assumes that the petitioner did not file a certiorari petition. Consequently, finality attached to the judgment of conviction when the time for filing a certiorari petition expired, shortly after the D.C. Circuit's resolution of the petitioner's second appeal in 1994. *See id.* Thus, under the first formula, the statute of limitations bars the petitioner's section 2255 challenge because he did not commence this habeas proceeding until June 2001, which amounts to a tardiness of more than seven years since the judgment of conviction became final. *Id.;* 28 U.S.C. § 2255 ¶ 6(1).

■ Normally, this conclusion would sound the death knell for a petitioner's section 2255 challenge. As in this case, however, a petitioner whose conviction became final before the AEDPA could initiate a section 2255 petition at any time before April 24, 1997, one year after the date of the AEDPA's enactment. *Cicero*, 214 F.3d at 200. Yet even under this one-year grace period, the petitioner's motion arrives too late because he filed it in June 2001, more than five years after the AEDPA went into effect. Thus, the court cannot consider the petitioner's section 2255 claims under the first formula.

### b. Newly–Recognized Right

With respect to the third formula, the petitioner contends that he asserts a newly-recognized right under section 2255, referring specifically to the Supreme Court's holding in *Apprendi*, which requires " 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt.'"[3] *United States v. Fields*, 251 F.3d 1041, 1043 (D.C.Cir.2001) (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348); Pet'r Am. § 2255 Mot. at 75. The petitioner argues that the newly-recognized-right exception allows him one year from when the Court ruled in *Apprendi* to assert that the sentencing judge violated *Apprendi* by not submitting to a jury the alleged amount of drugs involved in the conspiracy for the purpose of establishing the petitioner's base offense level. Traverse I at 5. The petitioner thus claims that he presents his case in a timely manner by filing it before June 26, 2001, *Apprendi*'s one-year anniversary.[4]

■ Regardless of any dispute over the timing of the petitioner's filing, the court determines that his habeas motion fails to meet the key requirement of retroactivity under the newly-recognized-right excep-

tion to section 2255's statute of limitations. 28 U.S.C. § 2255 ¶ 6(3). To wit, the controlling statute requires that the right be "made retroactively applicable to cases on collateral review." *Id.* A new constitutional rule of criminal procedure shall only apply retroactively if "it places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," or announces a watershed in criminal procedure. *Teague v. Lane*, 489 U.S. 288, 311–12, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citations omitted).

■ In the instant case, the petitioner does not assert that *Apprendi* prevents the state from criminalizing certain kinds of primary, private individual conduct. Instead, the petitioner asserts that *Apprendi* falls under the watershed exception.[5] Pet'r Am. § 2255 Mot. at 84. The

---

3. Neither party suggests that the petitioner's claim of ineffective assistance of counsel presents a newly-recognized right made retroactive, which would bring it within the ambit of section 2255. Thus the court need not address whether a claim of ineffective assistance of counsel applies retroactively.

4. In its initial motion to dismiss, the respondent argues that the petitioner's motion falls outside the *Apprendi* window because the petitioner signed it on July 11, 2001. Resp't Mot. at 2–3 (referring to the petitioner's amended section 2255 motion). The respondent later retreats from that position upon the belief that the petitioner filed his placeholder section 2255 motion "around June 25, 2001" and lodged his "more voluminous" amended motion on July 11, 2001. Resp't Supp'l Mot. at 3. While the petitioner's amended motion comes more than one year after *Apprendi*, courts have allowed an amended section 2255 motion to "relate back" to a timely filed motion. *United States v. Palmer*, 296 F.3d 1135, 1141 n. 8 (D.C.Cir.2002) (noting that other circuits allow an amended section 2255 motion to relate back "if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to press a new theory") (citations omitted); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir.

2000) (importing the same "conduct, transaction, or occurrence" test from Federal Rule of Civil Procedure 15(c) into the section 2255 context); *United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir.2000) (applying a "same conduct, transaction, or occurrence" test to determine if an amended section 2255 motion relates back). Accordingly, the petitioner's amended motion, by raising the same ineffective assistance of counsel and *Apprendi* claims as in his placeholder motion, relates back to the latter motion. *Id.*

5. A watershed rule in criminal procedure implicates "the fundamental fairness and accuracy of the criminal proceeding." *Tyler v. Cain*, 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (citing *Graham v. Collins*, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)). The "paradigmatic" example of a watershed rule is the Court's holding in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which established that the accused has the right to have representation by counsel in all criminal trials for "serious offenses." *Gray v. Netherland*, 518 U.S. 152, 170, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (citing *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).

court disagrees. To apply retroactively, the watershed rule "must meet two requirements: Infringement of the rule must 'seriously diminish the likelihood of obtaining an accurate conviction,' and the rule must 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." *Id.* (citing *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).

As to the first prong of the watershed test, whether a jury or judge determines a fact necessary to increase a sentence has nothing to do with the accuracy of a criminal conviction because sentencing, by its very definition, occurs after the jury has determined the defendant's guilt or innocence. *See Sepulveda v. United States,* 330 F.3d 55, 60 (1st Cir.2003) (remarking that a conviction must occur before the *Apprendi* right can possibly be infringed), 124 S.Ct. 427, 124 S.Ct. 427, 157 L.Ed.2d 272 (2003) (denying motion to file a certiorari petition); *United States v. Sanchez–Cervantes,* 282 F.3d 664, 669 (9th Cir.2002) (pointing out that "the accuracy of the underlying conviction is not at issue" because an "alleged *Apprendi* error only concerns an enhancement of the defendant's sentence"), *cert. denied,* 537 U.S. 939, 123 S.Ct. 48, 154 L.Ed.2d 243 (2002). Thus, the petitioner's failure to meet the accuracy prong prevents the court from determining that *Apprendi* comprises a watershed rule.

Assuming *arguendo* that the petitioner satisfies the accuracy prong, he would nevertheless fail to pass muster under the second prong, which requires an alteration of "our understanding of the bedrock procedural elements essential to a fair proceeding." *Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). While the D.C. Circuit has not yet provided guidance on this prong,[6] other circuits have forcefully and unanimously rejected the notion that *Apprendi* constitutes a watershed rule. *Harris v. United States,* 536 U.S. 545, 581, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., dissenting on other grounds) (clarifying that "[n]o Court of Appeals, let alone this Court, has held that *Apprendi* has retroactive effect"); *United States v. Swinton,* 333 F.3d 481, 482 (3d Cir.2003) (following the lead of other courts of appeals which "have uniformly held that *Apprendi* does not apply retroactively to cases on collateral review"), *cert. denied,* —— U.S. ——, 124 S.Ct. 458, 157 L.Ed.2d 330 (2003); *Sepulveda,* 330 F.3d at 61 (same); *United States v. Brown,* 305 F.3d 304, 305 (5th Cir.2002) (per curiam) (same), *cert. denied,* 538 U.S. 1007, 123 S.Ct. 1919, 155 L.Ed.2d 840 (2003); *Curtis v. United States,* 294 F.3d 841, 844 (7th Cir.2002) (same), *cert. denied,* 537 U.S. 976, 123 S.Ct. 451, 154 L.Ed.2d 334 (2002); *Goode v. United States,* 305 F.3d 378, 382–85 (6th Cir.2002) (same), *cert. denied,* 537 U.S. 1096, 123 S.Ct. 711, 154 L.Ed.2d 647 (2002); *Sanchez–Cervantes,* 282 F.3d at 671 (same); *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir.2001) (same); *United States v. Moss,* 252 F.3d 993, 1001 (8th Cir.2001), (same); *United States v.*

---

**6.** *See United States v. Pettigrew,* 346 F.3d 1139, 1144 (D.C.Cir.2003) (declining to decide whether *Apprendi* applies retroactively given that the petitioner did not initially raise the issue on direct review); *United States v. Hobbs,* 2003 WL 22005999, at *2, 2003 U.S.App. LEXIS 17089, at *6 (D.C.Cir. Aug. 19, 2003) (per curiam) (noting that "[t]his court has not decided whether *Apprendi* applies retroactively to cases on collateral review"); *United States v. Lafayette,* 337 F.3d 1043, 1048 (D.C.Cir.2003) (deciding that, in light of the fact that any *Apprendi* error was harmless, there is no need to address whether *Apprendi* applies retroactively to cases on collateral appeal); *United States v. Hicks,* 283 F.3d 380, 389 (D.C.Cir.2002) (unwilling to decide the issue of retroactivity because the petitioner did not assert it "as a basis for the timeliness of his motion").

*Sanders,* 247 F.3d 139, 146 (4th Cir.2001) (same).

As courts have noted, *Apprendi* merely clarifies the identity of the judicial actor— a jury rather than a judge—who must find the existence of a fact necessary to increase a sentence instead of announcing, for example, a new essential element of a fair trial. *Brown,* 305 F.3d at 309 (noting that *Apprendi* "did not change what the government must prove, only that the jury, rather than the judge must decide the question of drug quantity"); *Moss,* 252 F.3d at 998 (rejecting the notion that "*Apprendi's* rule re-characterizing certain facts as offense elements ... resides anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial"); *Sanders,* 247 F.3d at 148 (accepting the view that "a rule which merely shifts the fact-finding duties from an impartial judge to a jury clearly does not fall within the scope of the [watershed] exception") (citing *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Moreover, recognizing *Apprendi's* retroactivity would inflict a devastating blow to the judiciary's essential interest in the finality of criminal cases. *Brown,* 305 F.3d at 306 (stating that the general rule against retroactivity "advances the interest in finality of judgments in the criminal system"); *see also Teague,* 489 U.S. at 309, 109 S.Ct. 1060 (recognizing that an "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system").

In sum, the *Apprendi* rule is not retroactively applicable under the watershed test. *Id.* Thus, *Apprendi* does not qualify as a right "newly recognized" and "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 ¶ 6(3). Without qualifying for the newly-recognized-right exception, the petitioner's section 2255 claims must certainly fail because he did not advance his challenge within one year of the date when his judgment of conviction became final.[7] *Id.; Clay,* 537 U.S. at 527, 123 S.Ct. 1072.

### 3. Equitable Tolling Is Inapplicable to the Petitioner's *Apprendi* Claim

In the alternative, the petitioner argues that the principle of equitable tolling salvages his section 2255 claims notwithstanding the bar imposed by the statute of limitations. Traverse III at 4. As with the retroactivity question, the D.C. Circuit has not had the opportunity to resolve whether equitable tolling applies in a case involving a section 2255 motion.[8] It has, however, surmised that equitable tolling would apply in such a case only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Cicero,* 214 F.3d at

---

7. The petitioner hypothesizes in his latest traverse that due process requires the court to apply *Apprendi* retroactively in this case. Traverse III at 9–12. The court discerns no palpable difference between his due-process and *Apprendi* arguments. *Id.* Indeed, the petitioner himself presents no authority that draws such a distinction. Such unsupported declarative statements do nothing to help the petitioner shoulder his burden in sustaining his contention. *Simpson,* 475 F.2d at 935; *Wright,* 624 F.2d at 558; *DiCarlo,* 575 F.2d at 954; *Crail,* 430 F.2d at 460; *Miller,* 261 F.2d at 547. Thus, the court rejects the petitioner's due-process argument.

8. *E.g., United States v. Saro,* 252 F.3d 449, 454 (D.C.Cir.2001) (deciding not to resolve whether equitable tolling applies in the section 2255 context because the petitioner's claim would be untimely even if equitable tolling applied); *Cicero,* 214 F.3d at 203 (leaving for another day a ruling on the applicability of equitable tolling in a habeas case given that the petitioners had failed to demonstrate "extraordinary circumstances" justifying equitable tolling).

203 (quoting *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1289 (9th Cir.1997)). In contrast, sitting on one's rights, lack of representation, or ignorance of the law do not comprise extraordinary circumstances. *Id.* (citations omitted). Instead, the given reason must be akin to a successor counsel's inability to use the work product of the petitioner's previous counsel. *Id.* at 203.

▮ The petitioner does not so much as hint at *any* circumstance that prevented him from filing his petition on time. He instead circularly contends that equitable tolling should apply to his case because he will have no other remedy for challenging his detention if *Apprendi* is not retroactive and the statute of limitations bars his section 2255 claims. Traverse III at 4. Yet, as the Supreme Court has acknowledged, Congress clearly intended for the AEDPA to bring greater finality to convictions by restricting use of the writ of habeas corpus. *Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (making clear that "[t]here is no doubt Congress intended AEDPA to advance" the principle of finality); *accord David v. Hall*, 318 F.3d 343, 346 (1st Cir.2003) (understanding that Congress's main purposes for the AEDPA were "to compel habeas petitions to be filed promptly after conviction and direct review, to limit their number, and to permit delayed or second petitions only in fairly narrow and explicitly defined circumstances"), *cert. denied,* — U.S. ——, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir.2002) (indicating that "[a] fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings") (citations omitted), *cert. denied,* 538 U.S. 947, 123 S.Ct. 1622, 155 L.Ed.2d 490 (2003); *United States v. Wilson*, 256 F.3d 217, 220 (4th Cir.2001) (reasoning that Congress intended to "limit the collateral review of stale [habeas] claims" with its

passage of the AEDPA); *Johnson v. United States*, 246 F.3d 655, 659 (6th Cir.2001) (discerning a "strong preference [in the AEDPA] for swift and final adjudication of § 2255 motions, as expressed through its strict limitation period and constraints on successive petitions"). Accepting the petitioner's invitation to toll the statute of limitations on the rationale that it bars his section 2255 motion not only would fly in the face of the express purposes underlying the AEDPA, but would also ignore the extraordinary-circumstances requirement. *Id.; Cicero*, 214 F.3d at 203. Such an iron-fisted rule of law does not lend itself to the kid-glove application that the petitioner seeks. *See Cicero*, 214 F.3d at 201 (determining that not even a petitioner being stabbed, spending five days hospitalized, and an unspecified amount of time in segregation with restricted library access constitutes an extraordinary circumstance).

The petitioner also argues that an application of the statute of limitations to bar his section 2255 claims constitutes a suspension of the writ of habeas corpus. Traverse III at 6. To qualify as such a suspension, the AEDPA's statute of limitations must render the writ an inadequate and ineffective tool to test the legality of an individual's detention. *Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). Although the D.C. Circuit has not expressed its thoughts on the matter, several other circuits have concluded that the Constitution's Suspension Clause, Art. I, § 9, cl. 2, does not require the imposition of equitable tolling against the running of the AEDPA's statute of limitations. *Johnson v. United States*, 340 F.3d 1219, 1228 n. 8 (11th Cir.2003) (citations omitted); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.2003) (citation omitted), *cert. denied,* — U.S. ——, 124 S.Ct. 328, 157 L.Ed.2d 224 (2003); *Delaney v. Matesanz*, 264 F.3d 7, 12 (1st Cir.

2001) (citations omitted); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 113 (2d Cir.2000) (citing *Rodriguez v. Artuz,* 161 F.3d 763, 764 (2d Cir.1998) (per curiam)); *Molo v. Johnson,* 207 F.3d 773, 775 (5th Cir.2000) (per curiam). The Supreme Court has similarly upheld the AEDPA's restrictions on successive petitions against a Suspension Clause challenge, reasoning that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (quoting *Lonchar v. Thomas,* 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)); *accord United States v. Ortiz,* 136 F.3d 161, 168 (D.C.Cir. 1998) (marching in lockstep with *Felker's* holding that "the new procedures and new standards ... created by the AEDPA are a constitutionally permissible restraint on abuse of the writ" (quotation omitted)).

The petitioner fails to demonstrate how the AEDPA renders the writ any less effective or adequate as a tool to root out illegal detention. Indeed, the AEDPA's principal effect is to limit, rather than suspend, the writ by providing that those who fail to timely file a habeas petition forfeit the opportunity to do so. *See Matesanz,* 264 F.3d at 12 (describing the AEDPA as a "reasonable limit[ ]" on the writ) (citation omitted); *Molo,* 207 F.3d at 775 (determining that the statute of limitations does not make the writ inadequate or ineffective because "nothing prevent[s] [a petitioner] from filing a petition before the limitations period expire[s]"). As opposed to what the petitioner may think, one year is not such an unreasonably small measure of time in which to expect a petitioner to assert his rights. *See Lucidore,* 209 F.3d at 113 (holding that the "AEDPA's one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits"). Accordingly, the court grants the respondent's motions to dismiss the petitioner's section 2255 claims.

**D. The Court Denies the Petitioner's Section 3582 Motion**

■ The court's task is not at an end. The petitioner makes two late-breaking arguments in his section 3582 motion.[9] First, the petitioner claims that the guideline range that defined his sentence is unconstitutional because it "permits a judge rather than the jury to find the facts necessary to establish an element of the crime" and it "authorizes the sentencing court to usurp the role of the jury by determining which objects in a multi-object offense were proved beyond a reasonable doubt." Pet'r § 3582 Mot. at 3, 6. In other words, the petitioner essentially claims that the trial court improperly based his sentence on facts that the jury did not determine to be true beyond a reasonable doubt. *Id.* The more appropriate vehicle for this line of attack, however, is a section 2255 motion because that statute provides a mechanism for challenging

---

**9.** As the D.C. Circuit has explained, section 3582(c) provides that

> a court "may not modify a term of imprisonment once it has been imposed[,] except that" the court may reduce a prison term "in the case of a defendant who has been sentenced ... based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c) (emphasis

added). To implement that provision, the Sentencing Commission promulgated Guideline § 1B1.10, which contains a list of guideline amendments and states that "if none of the amendments listed ... is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized." U.S.S.G. § 1B1.10(a), p.s. (2000). *United States v. Young,* 247 F.3d 1247, 1253 (D.C.Cir.2001).

an illegally imposed sentence. 28 U.S.C. § 2255 ¶ 1; *Marshall,* 440 F.2d at 200; *Gomori,* 533 F.2d at 875. Indeed, the petitioner's instant argument appears indistinguishable from the *Apprendi* claim presented in his section 2255 motion. *Compare* Pet'r Am. § 2255 Mot. *with* Pet'r § 3582 Mot. Thus, the court treats the first of his section 3582 arguments as another submission filed in support of his section 2255 challenge.[10] Applying the same reasoning as before, the court concludes that the statute of limitations bars this reiterated *Apprendi* argument.

For his second and final argument, the petitioner seeks a retroactive application of Amendment 591 to the U.S. Sentencing Guidelines,[11] which came into being more than seven years after the petitioner's re-sentencing. Pet'r § 3582 Mot. at 2–4. The petitioner believes that Amendment 591 requires a modification of his sentence because it prevents a sentencing court from considering actual conduct "when selecting the applicable offense guideline section," which is what the petitioner believes occurred at his re-sentencing. *Id.* at 4. Instead of demonstrating

section 3582(c)'s necessary criteria for relief or identifying the alleged actual conduct that the sentencing judge improperly considered, the petitioner launches into an exploratory digression that rummages through various sentencing guidelines without rhyme or reason. While the court appreciates the lesson in sentencing law and procedure, the petitioner should have signaled how that body of law impacts his case. By neglecting to tie his conveyed legal theories to any cognizable argument, the petitioner fails to persuade the court that Amendment 591 mandates a modification of his sentence. *See United States v. Sprague,* 135 F.3d 1301, 1306–07 (9th Cir. 1998) (ruling that "the movant must show that the retroactive sentencing guideline amendment . . . is applicable to the challenged sentence . . . by a preponderance of the evidence"); *United States v. Profeta,* 2001 WL 1488668, at *1, 2001 U.S.App. LEXIS 25842, at *2 (D.C.Cir. Oct. 15, 2001) (non-precedential) (affirming district court's denial of appellant's section 3582(c) motion because he failed to make the necessary showing to warrant relief) (citing *Bifulco v. United States,* 447 U.S. 381, 387,

---

10. At first glance, it might appear that *Castro v. United States,* — U.S. —, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003), prevents the court from treating the petitioner's instant *Apprendi* argument as identical to his section 2255 motion without first providing him with notice. *Castro* commands courts not to

> recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive" restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.

*Id.* at 789 (emphasis in original). The *Castro* notice requirement, however, is inapplicable to the case at bar because the court is not recharacterizing the petitioner's instant *Apprendi* argument as his first-filed section 2255 motion. Rather, the court simply views it as

additional briefing in support of his already-filed section 2255 motion, much like his trilogy of traverses.

11. Amendment 591 clarified that "the initial selection of the offense guideline [must] be based only on the statute (or offense) of conviction rather than on judicial findings of actual conduct [such as drug quantity] that will never be made by the jury." *United States v. Rivera,* 293 F.3d 584, 585 (2d Cir. 2002). Prior to the amendment, some courts determined that the particular conduct in a case rendered the offense guideline for the statute of conviction inappropriate and selected, for sentencing purposes, the offense guideline for a different statute of conviction. *United States v. Diaz,* 245 F.3d 294, 302 (3d Cir.2001). Amendment 591 put an end to this practice by requiring that the offense guideline match the statute of conviction. *See Rivera,* 293 F.3d at 585.

100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)); *In re Lawrence*, 2000 WL 1946575, 2000 U.S.App. LEXIS 35406 (D.C.Cir. Dec. 20, 2000) (non-precedential) (same). In light of this shortcoming, the court denies relief to the petitioner under section 3582©.

## IV. CONCLUSION

For the foregoing reasons, the court grants the petitioner's motion for leave to file his amended section 2255 motion, denies the petitioner's motion for appointment of counsel, grants the respondent's motions to dismiss, and denies the petitioner's section 3582 motion. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of April 2004.